(No. 11994.—Decree affirmed.)
SALENA WILLIAMSON et al. Appellants, vs. S. EDWARD
CARNES et al. Appellees.

*Opinion filed October 21, 1918.*

1. WILLS—*courts favor construction giving estate of inheritance to first devisee.*  Courts will adopt a construction of a will giving an estate of inheritance to the first devisee unless other limiting or qualifying clauses in the will disclose clearly and unequivocally that it was the intention of the testator to limit or qualify the estate.

2. SAME—*when death of devisee before that of testator is contemplated.*  Where the fee of land is devised to the testator's children, a subsequent provision that in case of their death without leaving children surviving the property shall go to others, refers to the contingency of the death of the children before the death of the testator, and if they survive the testator they are immediately vested with the fee.

3. SAME—*when gift over does not include children of a person dead before will was made.*  Where the testator makes specific bequests to the three children of a daughter who was dead before the will was made and then gives the fee of his land to his four living children, a provision for a gift over of the share of any child dying without issue to the living children "and the child or children of any dead child," does not include the children of such deceased daughter but refers to children dying after the testator's death and leaving surviving children.

4. SAME—*will construed as referring to death of devisee before death of testator.*  Where the testator has given the fee of land to his four children and provided that if any of them shall die before the testator and leave a child or children such surviving child or children shall take the deceased child's share, a further provision in the same clause directing the disposition of the property in case "any son or daughter shall die without child or children," refers, also, to death before the death of the testator.

APPEAL from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

ANDERSON & MATTHEWS, for appellants.

W. E. WILLIAMS, and A. CLAY WILLIAMS, for appellees S. Edward Carnes and Margaret Carnes.

L. T. GRAHAM, for Thos. R. Miller, Harvey S. Miller and David Miller.

EDWIN JOHNSTON, guardian *ad litem.*

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

Richard Carnes died testate in Pike county, Illinois, on July 26, 1902, leaving him surviving Guldy Carnes, his widow, and five children and three grandchildren, as his only heirs-at-law. George Carnes, a son, died July 19, 1917, without ever having had any child or children born to him but leaving surviving his widow, Margaret Carnes. The surviving children of Richard Carnes are Henry Carnes, who has three living children; Mary Nelson, who has three living children; Salena Williamson, who has living twelve children, and S. Edward Carnes, who has never had born to him any child. The three grandchildren are Thomas R. Miller, David Miller and Harvey Miller, sons of Eliza Miller, a daughter, who died February 14, 1878. The will of the testator was admitted to probate in the county court of Pike county, and after the direction that all his just debts should be paid, provided as follows:

"*Second*—I give to my grandchild Thomas R. Miller the sum of $500, and also give to my grandson David Miller the sum of $500, and also give to my grandson Harvey Miller the sum of $500, the said above named grandchildren being the sons of Eliza Miller, the deceased daughter of the said Richard Carnes.

"*Third*—I direct that my beloved wife shall take and have her legal right and interest in the estate of the said Richard Carnes.

"*Fourth*—I give, bequeath and devise the remainder of my estate, both real and personal, to my sons and daughters now living, to be divided equally between said sons

and daughters, and if any of said sons or daughters shall die before the said Richard Carnes, and leave a child or children, such deceased child or children's share shall go to the child or children of such deceased child or children, and any son or daughter shall die without child or children, then in such case such deceased child's share so dying without child or children shall be divided equally between the living children and the child or children of any dead child."

The will was executed February 8, 1890, and named S. Edward Carnes and George Carnes as executors. The testator died seized in fee simple absolute of 1663.15 acres of land in Pike county, of the value of $125,000, and possessed of personal property of the value of $50,000. After his death the five living children made partition of his real estate by quit-claim deeds to each other of their respective portions. The other four children deeded to George Carnes, November 13, 1902, the following of said lands: The northeast quarter of the southwest quarter and the west half of the southwest quarter of section 20; all that part of the east half of the northwest quarter of said section lying south of the right of way of the Wabash railroad; the northeast quarter of the southeast quarter of section 19, and the south half of the northwest quarter of section 29,—all in township 4, south, range 3, west of the fourth principal meridian. Guldy Carnes, widow of the testator, also signed said deed, the consideration named being one dollar. The language used in the deed to convey said land is as follows: "Do alien, release, remise and quit-claim unto the said party of the second part, and to his heirs and assigns, those certain tract or parcel of land, with the appurtenances, lying and being in the county of Pike and State of Illinois, described as follows, to-wit: * * * To have and to hold the aforesaid granted premises to the said party of the second part, his heirs and assigns, to his and their use and behoof forever, including the release and waiver of the right of homestead."

George Carnes made a will, which was duly probated in the county court of Pike county, by which, after directing that all just debts and funeral expenses be paid, he bequeathed to Margaret Waters the sum of $1000, and, subject to said provisions, he devised to his wife, Margaret, for life, all property of every kind and nature of which he might die possessed, she to have full use and control of the same. By the further provisions of his will, at the death of his wife, Edna Koontz, Alice White, George Carnes, (son of the testator's nephew, Hayes Carnes,) George Edward Williamson, George Carnes, (son of his cousin, Jerry F. Carnes,) the United Brethren Church of Maysville and Margaret Waters were bequeathed legacies ranging from $300 to $3000. Subject to all the foregoing provisions and at the death of his wife, Margaret, by his will he gave, devised and bequeathed to his nephews and nieces, except his nephew Emmett Carnes, all the remainder of his property, to be divided share and share alike, and named Margaret Carnes as his executrix.

Salena Williamson, Mary Nelson and Henry Carnes, two daughters and a son of Richard Carnes, filed a bill in the circuit court of Pike county, Illinois, December 6, 1917, for the partition of the lands deeded by the widow and children of Richard Carnes to George Carnes, as aforesaid. The bill set forth the foregoing facts, and it was charged therein that the complainants in the bill, and their brother, S. Edward Carnes, were the owners in fee simple of said premises as tenants in common, each being entitled to one-fourth thereof, by reason of the provisions of the will of Richard Carnes and the death of George Carnes without leaving children or descendants of children. S. Edward Carnes and all of the legatees and devisees named in the will of George Carnes, and Thomas Belford and Henry Weiniger, tenants in possession of the land, were made parties defendant to the bill. Certain of the defendants were minors and a guardian *ad litem* was appointed for them,

who filed a demurrer to the bill. Demurrer thereto was also filed by Thomas R., David and Harvey Miller. Margaret Carnes and S. Edward Carnes also filed a third demurrer to the bill. The other adult defendants made default. The demurrers of the guardian *ad litem* and of Margaret Carnes and S. Edward Carnes were sustained, and the court entered a decree on the demurrers dismissing the bill for want of equity. The complainants in the original bill have prosecuted this appeal.

The decision in this case depends solely upon one question, and that is, what is the proper construction and interpretation to be placed upon the latter part of the fourth paragraph of the will of Richard Carnes, reading thus: "and any son or daughter shall die without child or children, then in such case such deceased child's share so dying without child or children shall be divided equally between the living children and the child or children of any dead child." Appellants contend that the testator by the words in said clause "shall die without child or children," meant die without child or children at any time, either before or after the death of the testator. They therefore contend that they, together with S. Edward Carnes, their only other living brother, at the death of George Carnes became seized of the lands deeded to him, as tenants in common in fee simple, under the provisions of their father's will. They also contend that the Miller children could not take under the fourth paragraph of said will because their mother was dead and had been dead for a number of years at the time the will was made, and that the gift to the grandchildren was a substitutionary gift, and the Miller children could not take by way of substitution as their mother was not a member of the class who took as direct or primary devisees. S. Edward Carnes, Margaret Carnes, and the infant defendants by their guardian *ad litem,* contend that the words "shall die without child or children," in that clause of the fourth paragraph we are considering, mean die without child

or children during the lifetime of the testator. They therefore claim that George Carnes, having survived his father, Richard Carnes, took by the will the fee simple title to the lands in question. They further contend that the quit-claim deed from the other heirs and the widow of Richard Carnes operated not as a partition, simply, but by way of a release, and estopped appellants from asserting any title to the premises in controversy. The Miller heirs have assigned cross-errors, and they contend that the words in said clause "shall die without child or children," mean die without child or children at any time, either before or after the death of the testator, and that the intent of the testator expressed by the remaining words in the fourth paragraph was that they should take, as the heirs of Eliza Miller, a share in any lands devised to any child by Richard Carnes by his will who died either before or after the death of the testator, leaving no children or descendants of children. The lower court held that George Carnes under the will of his father took a fee simple title at his father's death to an undivided one-fifth of all the lands of which his father died seized, and that upon the partition of said lands by deeds, as aforesaid, he became the absolute owner in fee simple of the lands in question.

Up to the latter part of the fourth paragraph of the testator's will the testator expressed himself in clear and unmistakable language. His debts were to be paid and the widow was to receive of the testator's estate just what the law would have given her had he died intestate. The Miller heirs were to receive only $500 each, and the remainder of the estate, both real and personal, by the express terms of the will was to be divided equally among his sons and daughters living at the time he made his will, and if any one of the sons and daughters then living should die before the testator and leave a child or children, such deceased child's share should go to the child or children of such deceased child. It is equally clear that the words "any son

or daughter," in that clause of paragraph 4 in dispute, re-
fer to any son or daughter of the testator's sons and daugh-
ters living at the time he made his will, and that the words
"living children," in the same clause, refer to the children
of the testator surviving the death of "any son or daughter"
who was living at the time the testator made his will. We
think it is equally clear that the closing words of said clause,
"child or children of any dead child," mean child or chil-
dren of any dead child who was living at the time of the
making of the will, because in the fourth paragraph he had
in mind his sons and daughters then living and the child
or children of such of them as should die, and was thereby
making provision for them in his will and was not under-
taking to make any provision whatever for the children of
Eliza Miller, who had died many years before the testator
made his will. He had already provided for the Miller
children by the second paragraph of his will. There is
therefore a clear intent expressed by the testator in his will
to practically disinherit the Miller children, or to only give
each $500 out of his large estate. But for such intent to
only give the Miller heirs $500 each there would have been
no occasion or necessity for the testator to make a will, as
we think it was also the clear intent of the testator that his
sons and daughters living at the time he made his will
should share equally in the remainder of his property if
living at his death, and that if any of them should die be-
fore his death, with or without children, his surviving chil-
dren and the children of any of said sons or daughters who
should die before the testator should share the property of
which he died seized or possessed, the child or children of
such child dying after the making of the will and before
the death of the testator taking only the share that their
deceased father or mother would have taken had he or she
been living at the testator's death. This idea is clearly ex-
pressed by the fourth paragraph of the will up to and pre-
ceding that part in dispute. Of course, no son or daughter

of the testator could ever have a share in the testator's property unless living at the time of the testator's death, yet we find in paragraph 4 these expressions: "if any of said sons or daughters shall die before the said Richard Carnes and leave a child or children, such deceased child or children's share shall go to the child or children of such deceased child or children, and any son or daughter shall die without child or children, then in such case such deceased child's share so dying without child or children shall be divided equally between the living children." We therefore think that the clear intent of the fourth paragraph of the will was to devise to each of the sons and daughters the fee simple title to an undivided one-fifth of the testator's real estate, and that they should take title to such shares if living at the testator's death, regardless of whether they died with or without children them surviving. Our conclusion therefore necessarily is that the clauses last above quoted were merely inserted in the will to prevent a lapse in case of the death of any one of his living children before the testator died.

For the foregoing reasons the latter part of paragraph 4 should be construed and interpreted in the same manner as if the preceding words in the paragraph, "before the said Richard Carnes," were actually written after the words "and any son or daughter shall die," at the beginning of the last clause of the paragraph. In other words, such clause should be interpreted as if it read, "and any son or daughter shall die before the said Richard Carnes, without child or children, then in such case such deceased child's share so dying without child or children shall be divided equally between the living children and the child or children of any dead child of my sons and daughters now living." The whole context of the will indicates that such is the correct interpretation of the testator's will, and the construction and punctuation found in the fourth paragraph are in harmony with such interpretation, when we consider the further fact that the clause in question is connected with

the preceding clause by the conjunction "and." Besides, it
has become a settled policy òf this court to adopt the con-
struction of a will that will give an estate of inheritance to
the first devisee, unless other limiting or qualifying clauses
in the will disclose clearly and unequivocally that it was the
intent of the testator to limit or qualify the estate granted.
(*Becker* v. *Becker,* 206 Ill. 53; *Kohtz* v. *Eldred,* 208 id.
60.) It is also the settled rule of this court that estates,
legal or equitable, given by will should always be regarded
as vesting immediately, unless the testator has by very clear
words manifested an intention that they should be contin-
gent on a future event. *Scofield* v. *Olcott,* 120 Ill. 362;
*Kohtz* v. *Eldred, supra.*

Under the interpretation placed upon the testator's will
by the appellants and the Miller heirs, George Carnes and
S. Edward Carnes at the death of their father took only a
base or determinable fee under his will, which would last
forever only in case they died leaving a child or children,
but which would go to their surviving brothers or sisters
in fee in case of their death without leaving a child or chil-
dren, as contended by the appellants, and to their surviving
brothers and sisters and the three Miller children according
to their contention. We do not think that there is anything
in the context of the will that shows an intention of the
testator to make any provision by his will for such con-
tingent interests. There were no special circumstances sur-
rounding the testator at the time he made his will, so far
as the allegations of the bill show, that shed any particu-
lar light upon the context of the will more than the mere
words and general context of the will itself as above set
forth. We do not regard the ages of the various children
of the testator at the time he made his will, or the fact
that there were two of them at that time who had no chil-
dren, as furnishing evidence of his intent not to invest the
fee simple title to his lands in his children in case they sur-
vived him. George Carnes, the older of said two brothers,

284 – 34

was only a little over thirty-one years of age when the will was made, while S. Edward Carnes was not quite twenty-five years old.

As the court properly held that George Carnes became invested, under the provisions of his father's will, with the full fee simple title to said lands at the death of his father, it will not be necessary to consider the other questions raised by the briefs as to whether or not the other heirs of Richard Carnes are estopped by their deeds to question George's title. It is averred that the deeds were made for the purpose of partition of the lands in question among the heirs of Richard Carnes. No question is raised in this case that a partition was not fairly and equitably made among the heirs by deeds, and therefore George Carnes was invested with the full fee simple title to the premises and appellants and the Miller heirs have no right or interest therein.

The decree of the circuit court is therefore affirmed.

*Decree affirmed.*