(No. 11612.—Reversed and remanded.)

HOWARD W. MORRIS, Defendant in Error, *vs.* MARTHA W. PHILLIPS *et al.* Plaintiffs in Error.

*Opinion filed April 15, 1919.*

1. WILLS—*word "heirs" may be construed to mean children.* The word "heirs" is a technical term to designate those whom the law appoints to take intestate estates; but it may have a different meaning, and where it is evident that a testator meant children it will be so construed.

2. SAME—*when estates devised to "heirs" of the life tenants are vested.* Where a testator divides his estate among his children by separate devises of different tracts "unto the heirs" of each child, (naming such child,) "subject to his (or her) use, benefit and control" for life, and where grandchildren of the testator were living when he made the will and at his death, the word "heirs" will be construed to mean grandchildren, and they will take vested estates in fee, subject to the life estates of their parents.

3. SAME—*definition of a remainder.* A remainder is a remnant of an estate in land depending upon a particular prior estate created at the same time and by the same instrument in the same property and limited to arise immediately on the termination of that estate and not in abridgment of it.

4. SAME—*when limitation is by way of an executory devise.* Where a testator, after devising vested estates in fee to his grandchildren subject to life estates in their parents, provides in a subsequent clause that if any of the heirs of his body die without issue the estate devised in such case shall revert to the heirs of his body in equal shares, the limitation can take effect only in abridgment of the fee devised, and is not a remainder depending upon a prior particular estate but is an executory devise.

5. SAME—*when executory devise takes effect.* An executory devise does not require a particular estate for its support, but on the happening of the event on which it is limited the devise comes into existence by its own inherent capacity.

6. SAME—*a reversion is always vested.* In the case of property devised by will a reversion is the residue of the estate remaining in the heirs-at-law of the testator where less than the whole has been disposed of by the will, and a reversion is always vested, remaining in the heirs-at-law simply because the whole estate has not been devised.

7. SAME—*when devise over in case of death without issue takes effect.* Where the death of the first taker is coupled with circumstances which may or may not take place, such as death without living issue, a devise over, unless controlled by other provisions of the will, takes effect upon death under the circumstances indicated, whether before or after the death of the testator; but if the devise over is preceded by a particular estate and there is nothing in the will indicating a different intention, the executory devise will take effect in case of death before the termination of the particular estate.

WRIT OF ERROR to the Circuit Court of Vermilion county; the Hon. JOHN H. MARSHALL, Judge, presiding.

DAVID ALLISON, MAXWELL & MAXWELL, and HALL & HOLADAY, (L. A. CRANSTON, of counsel,) for plaintiffs in error.

REARICK & MEEKS, (KNAPP & CAMPBELL, of counsel,) for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Levi Long, of Georgetown, Vermilion county, died on March 20, 1902, leaving no widow and leaving his children, William L. Long, Charles F. Long, Nancy J. Black, Josiah S. Long, Sarah F. Baker and James P. Long, and his grandchildren, Joseph Levi Long, William T. Long and Anna C. Pritchard, children of his deceased son, John E. Long, his only heirs-at-law. He left a last will and testament, by the second clause of which he requested his heirs to make an equal division of his estate in seven equal shares among his five sons and two daughters, all of whom were living when the will was made, and expressed a wish that within two months after his death all his sons and daughters should meet and make due effort to effect such equal division among themselves, granting unto the heirs of William L. Long as such share, subject to his use, benefit and

control during the term of his natural life, his real estate therein described, containing 112 acres, being the old family homestead, and then to make equal division into six shares of the remaining real estate therein described, and in case of inability to make such division to select referees to make the same. A division, in either case, was to be made by interchanging deeds of conveyance, the grantees named in each deed to be the heirs of the respective sons and daughters, subject to a life use, benefit and control of the parent, son or daughter. In case of a failure to make such division, the devises contained in the subsequent clauses of the will by which he devised the several tracts of land were to become effective. There was no attempt by the children of the testator to make the division recommended by the second clause and the real estate passed by the subsequent devises, seven in number. The real estate in controversy in this case passed under the fourth, fifth and sixth clauses of the will as affected by the thirteenth clause. They are as follows:

"*Fourth*—Unto the heirs of my son William L. Long, subject to his use, benefit and control during the term of his natural life, I do hereby give and devise all of the" (describing 112 acres.)

"*Fifth*—Unto the heirs of my son Charles F. Long, subject to his use, benefit and control during the term of his natural life, I do hereby give and devise" (describing 50 acres.)

"*Sixth*—Unto the heirs of my daughter Nancy J. Black, subject to her use, benefit and control during the term of her natural life, I do hereby give and devise" (describing 40 acres.)

"*Thirteenth*—I hereby direct that if any of the heirs of my body shall depart this life leaving no living issue of their body, the said real estate so given or devised shall revert to the heirs of my body in equal shares, saving to the widow of any of my sons or to the husband of any of my daugh-

ters a life estate therein, if they have been a good, faithful and dutiful wife or a good, faithful and dutiful husband."

On November 30, 1903, the sons and daughters and the three grandchildren, with their wives and husbands, respectively, made quit-claim deeds among themselves, whereby each conveyed whatever interest the grantor had in any of the lands other than that specifically devised to such grantor, with covenants binding themselves, their heirs, executors, administrators and assigns, never to take, claim or assert any right, title or interest in or to the premises conveyed, or any part thereof, under the will or the Statute of Descent, and with further covenants to execute and deliver such further assurance or assurances as should or might be deemed necessary to perfect title in the premises conveyed in the grantee and his or her heirs or assigns. The lands described in the conveyances to William L. Long, Charles F. Long and Nancy J. Black were the same devised by the fourth, fifth and sixth clauses of the will, respectively. William L. Long had eight children, and on August 20, 1915, by separate deeds he and seven of his children, with their respective wives and husbands, conveyed to the defendant in error, Howard W. Morris, by deeds of bargain and sale, the life estate and remainder in fee, and all interest, present or future, in the lands devised by the fourth clause of the will. Charles E. Long, one of the plaintiffs in error, a son of William L. Long, did not join in any of the deeds. On the same day Charles F. Long and his children, with their respective wives and husbands, made similar deeds to defendant in error of the lands devised by the fifth clause, and on the same day Nancy J. Black and her children, with the husbands of the children, executed similar deeds to the defendant in error of the lands devised by the sixth clause.

On December 17, 1915, defendant in error, Howard W. Morris, filed in the circuit court of Vermilion county his bill of complaint to quiet his title to the lands devised

in the fourth, fifth and sixth clauses of the will, for which deeds had been made to him. The bill set forth numerous defects in the title, not involved in this writ of error, and alleged that by the will the children of the testator, William L. Long, Charles F. Long and Nancy J. Black, became seized of a life estate in the lands devised to them, respectively, with a contingent remainder to the surviving issue of his or her body, if any should be alive at his or her death; that the fee simple title was vested in the six children and three grandchildren as heirs-at-law of the testator, and that by the conveyances above recited the fee and life estates were united and the contingent remainders destroyed, and the fee simple title became and was vested in the complainant. The children and heirs-at-law of the testator, and his grandchildren and great-grandchildren, were made defendants. Plaintiff in error Charles E. Long answered the bill, denying that the fee simple title was vested in the complainant, and the guardian *ad litem* of the infant defendants made the usual answer. The issues were referred to the master in chancery, who took and reported the evidence with his conclusions that life estates were devised by the will to William L. Long, Charles F. Long and Nancy J. Black, with contingent remainders in the respective heirs of their bodies, provided such heirs should survive the life tenant; that pending such contingency the fee simple title vested in the heirs-at-law, and by their conveyances the contingent remainders were destroyed. The cause was heard on exceptions to the report, and a decree was entered containing the same findings as those of the master and decreeing a fee simple title in the complainant. A writ of error was sued out of this court, and Charles E. Long assigned errors on the record. The guardian *ad litem* appointed by this court was permitted to adopt such assignment of errors.

The word "heirs" used by the testator is a technical term to designate those whom the law appoints to take in-

testate estates. But it may have a different meaning, and where it is evident that a testator meant children it will be so construed. (*Griswold* v. *Hicks,* 132 Ill. 495; *Seymour* v. *Bowles,* 172 id. 521; *Wilson* v. *Wilson,* 261 id. 174; *Black* v. *Jones,* 264 id. 548.) William L. Long, Charles F. Long and Nancy J. Black each had children who were living when the will was made and at the death of the testator, and the word "heirs" was used as meaning children and to designate them. The devises were of present estates in fee, subject to the life estates of their parents. The remainder-men being in existence and ascertained and there being no uncertainty as to the event upon which they would become entitled to the possession and enjoyment of the estate, the remainders were vested.

There was no estate in remainder after the estates in fee limited to take effect in possession after the life estate. A remainder is a remnant of an estate in land depending upon a particular prior estate created at the same time and by the same instrument in the same property and limited to arise immediately on the termination of that estate and not in abridgment of it. The limitation by the thirteenth clause in case of a failure of issue could only take effect by interruption and abridgment of the fee previously devised and was not a remainder depending upon a particular prior estate. The limitation was by way of executory devise, which does not require a particular estate for its support, but on the happening of the event on which it is limited the devise takes effect and the estate comes into existence by its own inherent capacity.

In case of property devised by a will a reversion is the residue of the estate remaining in the heirs-at-law of the testator where less than the whole has been disposed of by the will. It is always vested, and remains in the heirs-at-law simply because the whole estate has not been devised. In this case the testator devised the fee, and there was no reversion in his heirs-at-law but only a possibility that it

might come back to them upon a future contingency. By the thirteenth clause the testator directed that if any of the heirs of his body should depart this life leaving no living issue of his body, the real estate devised should revert to the heirs of his body in equal shares, saving to the widow of any of his sons or the husband of any of his daughters a life estate therein if they had been a good, faithful and dutiful wife or a good, faithful and dutiful husband. When the will was made the testator had seven children, but one of them, John E. Long, to whom a life estate was given by the third clause with remainder to his heirs, died before the testator, leaving the three children above named, and as to the land devised by that clause the remainder vested in possession. By the thirteenth clause the testator first used the technical term "heirs of my body," but he could not have referred to the life tenants since their estates terminated at death, and the estates devised to them could not revert at their death but terminated at that event. He evidently referred to those to whom the remainder in fee had been devised by the previous clauses, to take effect in possession at the termination of the life estates. He provided if any of them should depart this life leaving no living issue, the real estate devised should revert to the heirs of his body in equal shares, subject to any interest of a surviving wife or husband. The issue of the body meant lineal descendants, and it was only in the event that any of the devisees of the fee should leave no descendants living the estate should revert. Where the death of the first taker is coupled with circumstances which may or may not take place, such as death without living issue, a devise over, unless controlled by other provisions of the will, takes effect upon death under the circumstances indicated, whether before or after the death of the testator, but if the devise over is preceded by a particular estate and there is nothing in the will indicating a different intention, the executory devise will take effect in case of death before the termination

of the particular estate. (*Lachenmyer* v. *Gehlbach,* 266 Ill. 11; *Sheley* v. *Sheley,* 272 id. 95; *Welch* v. *Crowe,* 278 id. 244; *Seymour* v. *Bowles, supra.*) The testator used the word "heirs" in the several devises of the fee in the sense of children, and as there is nothing in the context to indicate a different intention, he referred to the death of such children without living lineal descendants before the death of the life tenant. Children of the life tenants took the fee subject only to be defeated by the executory devise. William L. Long had eight children, and one-eighth of the fee in 112 acres in which he had a life estate was vested in each child. Charles E. Long did not convey his title and still has a fee, which is determinable only upon the happening of the event on which the executory devise is limited. It would only be upon the death of all of the devisees without lineal descendants during the continuance of any of the life estates that the fee would revert to the heirs-at-law of the testator not estopped, and this is a possibility of reverter, only. The deeds of November 30, 1903, made by the sons and daughters and three grandchildren, conveyed no present estate because they had no title to the lands described in the deeds which had been devised to the several grantees. None of the deeds made at any time were effective to convey future contingent interests or a possibility of reverter, and can only operate, if at all, by way of estoppel by virtue of the covenants expressed in the deeds or declared by statute. The findings that the remainders to the children of the life tenant were contingent and not vested, that the fee simple remained in the heirs-at-law of the testator and that such remainders were destroyed by the conveyances were not correct. The defendant in error has not acquired the title of plaintiff in error Charles E. Long.

The decree is reversed and the cause remanded.

*Reversed and remanded.*