(No. 18652.—Reversed and remanded.)
A. M. CLARK *et al.* Appellants, *vs.* ELMER B. LEAVITT *et al.* Appellees.

*Opinion filed April 21, 1928—Rehearing denied June 13, 1928.*

1. WILLS—*when words "die without issue" mean "die without having had issue."* Where there is a devise over in case a particular devisee should "die without issue" the words will be construed to mean "die without having had issue," unless a contrary intention appears in the instrument under construction; and such cannot be said to be the case where the will indicates an intention of the testator that the particular devisee might at some time have full power of disposal of the fee.

2. SAME—*when devise over depends on death of devisee at any time without issue.* A devise over upon the death of a particular devisee without issue will be construed to mean death of the devisee at any time under the specified condition unless other provisions indicate that the testator intended to mean death preceding his own, and although the testator has attempted to limit the interest of the particular devisee to the income, only, until she is thirty years of

age, the devise over will not be limited to the death of the devisee without issue prior to that time, where the testator's intention is clear that in case of birth of issue at any time the devisee shall have an indefeasible fee but that in case no issue is ever born to the devisee the fee shall go to his own collateral heirs.

3. SAME—*when devise over depends on death of devisee before termination of particular estate.* Where there is a devise to one person and in case of his death to another and the devise over is preceded by a particular estate, the devise over will take effect only in case of death occurring before the termination of the particular estate, if there is nothing in the will indicating a different intention.

4. SAME—*when the word "property" applies only to real estate.* While in its most comprehensive sense the word "property" includes everything of value which may be lawfully acquired and owned, it may be used with a more restricted meaning in accordance with the context of the instrument in which it is used; and where a testator provides that in case of the death of a particular devisee without issue "all my property" shall be sold and divided among other devisees, the word "property" must be construed to apply only to the real estate, where all the personal property is disposed of in earlier paragraphs of the will and where the particular devisee has been given all the real estate in the paragraph immediately preceding the one in which the word is used.

5. SAME—*what limitations are void as repugnant to fee given.* Where a devise is made directly to a devisee of all the testator's real estate, an attempt to limit the devisee's enjoyment of the estate to the income therefrom until she shall have reached the age of thirty years, and a provision restraining any form of alienation "until she shall have full power to sell the same," are void as being repugnant to the devise, although the devisee is given only a defeasible fee simple, which can become an absolute fee only on the birth of issue to her.

6. SAME—*when unexercised power to sell cannot affect devise over.* Where a testator gives his daughter all his real estate, with a devise over to his collateral heirs in case of her death without issue, a provision giving her full power to sell a portion of the real estate, with directions as to the investment of the proceeds, is an independent power which does not enlarge her defeasible estate into an absolute fee, and if the power is not exercised prior to her death without having had issue the devise over will take effect as to all the real estate.

APPEAL from the Circuit Court of Piatt county; the Hon. JAMES S. BALDWIN, Judge, presiding.

E. P. BROCKHOUSE, BROWN, HAY & STEPHENS, and J. L. HICKS, for appellants.

EDIE & EDIE, CARL S. REED, R. M. SHONKWEILER, Mc-DAVID, MONROE & MANN, and McMILLEN, McMILLEN & GARMAN, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Charles A. Clark executed his will on May 22, 1900. He was then suffering from an incurable disease, of which he died on January 17, 1901. At the time he executed his will his mother was living. He had ten brothers and sisters, who survived him. His daughter and only child became seventeen years of age January 22, 1901. His will was admitted to probate and its provisions were as follows:

"1st. It is my will that all my just debts and funeral expenses be paid.

"2nd. I give and bequeath to Elder A. J. Nance one hundred dollars to be paid in cash out of the cash now on hand.

"3rd. I give and bequeath to my sister Lizzie Kinzel one hundred dollars to be paid in cash out of first money on hands. I also give and bequeath to my brother Frank T. Clark my surrey and harness.

"4th. I give and bequeath to my daughter Stella M. Clark at her eighteenth birthday all my furniture of every kind that I may be devised of at my death.

"5th. I give and bequeath unto my daughter Stella M. Clark all my personal estate of every kind after the above bequests is paid.

"6th. I give and bequeath to my daughter Stella M. Clark all my real estate that I may be possessed of she to only have the income from the farm until she has attained the age of thirty years. The town property she may sell at any time within two years after my death. But it is my will she re-invest the procceds from such sale in other real estate with enough of my life insurance to buy 80 acres of land. Any mortgage or any paper that will in any way entail the real estate is to be void until she shall have full power to sell the same.

"7th. Should she die without issue I will that all my property be sold and divided between my brothers and sisters share and share alike or their heirs.

"8th. I hereby appoint my brother in law W. O. Kinzel executor of my last will and testament."

Stella M. Clark married Elmer B. Leavitt on October 21, 1904, and died on May 28, 1926, without ever having had a child and without having disposed of any of her father's town property within two years after his death. She left a will bequeathing all her personal property to her husband, and directed her executors to sell all of the real estate and pay to her husband $10,000, to Charles Clark $2000, to Edna Lux $1000, to Fay Lux $1000, to Mrs. Thomas E. Stahl $1000, and to pay one-half of the remainder of her estate to the legal heirs of her father and one-half to the legal heirs of her mother. All of the surviving brothers and sisters of Charles A. Clark except one brother, together with the descendants of the brothers and sisters who had died subsequent to his death, filed a bill in the circuit court of Piatt county praying for the construction of the will of Clark with reference to the estate given to Stella Clark Leavitt and to the power of sale contained in the seventh clause of the will, for the appoinment of a trustee to sell the lands described in the will, for the distribution of the proceeds of the sale, and for an accounting of the rents and profits of the land and the reasonable value of the use and occupation of the lands since the death of Mrs. Leavitt. The defendants to the bill were the brother of the testator who was not joined as a complainant, the executors of the will of Mrs. Leavitt, the legatees under her will, and other persons and corporations claiming an interest in the real estate through *mesne* conveyances from her. The defendants filed demurrers to the bill, which were sustained, and the complainants electing to stand by their bill it was dismissed for want of equity, and the complainants have appealed.

The decision of the case depends upon the construction of the will of Charles A. Clark, and the difference between the appellants' and the appellees' construction is, that the appellants contend that the phrase "should she die without issue," in the seventh clause of the will, refers to death at

330—23

any time without having had a child, and that as that event has occurred, the directions for a sale of the property and division among the brothers and sisters or their heirs must be given effect, while the appellees contend that the phrase refers to the death of the daughter during Clark's own lifetime or before she reached the age of thirty years.

The rule is, that if it appears clear from the entire will that the testator intended a limitation over if the first taker die without issue, or without heirs of the body or without issue of the body, to take effect only in case the first taker die without issue surviving him, that intention will be given effect; yet such words have not been given, in this country, a technical judicial meaning. Accordingly, cases are found involving the construction of such phrases in identical language, in some of which the words have been given the meaning if the first taker died without issue or children surviving, and in others the meaning without having had issue. (*Stafford* v. *Read,* 244 Ill. 138.) In the briefs are cited cases illustrating the difference of construction based not upon any technical meaning of the particular words, but upon the intention of the testator or grantor gathered from the various contexts and all the provisions of the will or deed the court had under consideration. However, unless a contrary intention appears in the instrument under construction, the words "die without issue" are construed as meaning "die without having had issue." *Noth* v. *Noth,* 292 Ill. 536, and cases there cited.

Counsel for the appellees say in their brief that the words "die without issue" to a layman do not mean "die without having had issue," and it is true that the words are of ambiguous meaning and that there has been a great conflict in the decisions of the various courts of this country and of England, but whatever may be the rule in other jurisdictions, it is established in this State that the primary meaning of the words is "die without having had issue."

The established rule is, that where there is a devise to one person and in case of his death to another, there being no contingent or doubtful circumstances connected with such death, the testator will be presumed to intend a death preceding his own, but if the devise over is to take effect upon the death of the first taker under circumstances which may or may not take place, the devise over, unless controlled by other provisions of the will, will take effect upon the death of the first taker under the circumstances specified, either before or after the death of the testator. (*Fifer* v. *Allen,* 228 Ill. 507; *Ahlfield* v. *Curtis,* 229 id. 139; *Lachenmyer* v. *Gehlbach,* 266 id. 11; *Sheley* v. *Sheley,* 272 id. 95; *Welch* v. *Crowe,* 278 id. 244; *Morris* v. *Phillips,* 287 id. 633; *Risser* v. *Ayers,* 306 id. 293.) There is another rule which operates as a modification of the rule just stated and is equally well established. It is, that if the devise over is preceded by a particular estate and there is nothing in the will indicating a different intention, the executory devise will take effect only in case of death occurring before the termination of the particular estate. (*Ahlfield* v. *Curtis, supra; Lachenmyer* v. *Gehlbach, supra; Sheley* v. *Sheley, supra; Welch* v. *Crowe, supra; Morris* v. *Phillips, supra; Risser* v. *Ayers, supra.*) Here the death of the daughter, the first taker, was coupled with the circumstance of being without issue, which might or might not occur, and under the rule announced the gift over was not limited to take effect only upon the death of his daughter without issue prior to his own death. He was suffering from an incurable disease; his daughter was unmarried and only sixteen years old. It would be unreasonable to suppose that under these circumstances the testator in inserting this clause in his will did so with reference to the possibility only of his daughter dying in his own lifetime. There is no language in the will indicating any intention contrary to the construction reached by the application of the established rule, and therefore the reference to the death of the tes-

tator's daughter without issue was not limited to death in the testator's lifetime. The gift over to the testator's brothers and sisters was not preceded by a particular estate, and therefore the expression "death without issue" did not refer to the termination of a particular estate but to death at any time.

In regard to the application of the first rule, the appellees contend that the conclusion should be drawn from the direction in the seventh clause to sell and divide all the testator's property in case Stella should die without issue; that the testator referred to her death in his lifetime because the direction includes personal property as well as real estate and the only time when all the testator's property could be sold was at his death, for after his death the bequests in the will would be paid and distributed in the course of administration and so much of the property would be gone, making it impossible to sell and distribute all of the property. It is true that "property," in its most comprehensive sense, includes everything of value which may be lawfully acquired and owned, but it may be used with a more restricted meaning, and when it is used in a will or other written instrument all the terms of the instrument must be considered in determining whether from the context it is used with a more restricted meaning. In this will all the personal property of the testator is disposed of by the second, third, fourth and fifth clauses, which have no reference to the real estate. Several general or specific bequests are made by the second, third and fourth clauses, and the fifth disposes of all the residue of the personal estate by an unqualified gift of it to the testator's daughter. Having thus completely disposed of his personal property by these clauses of his will the testator proceeded to dispose of his real estate by the sixth and seventh clauses, the first of which devises all the real estate to his daughter, subject only to the limitation that she shall have only the income from the farm until she has attained the age of

thirty years and a restriction of her power to convey the real estate. This clause refers to the real estate, only, and is followed immediately by the seventh, which directs that if the daughter should die without issue all his property should be sold and divided among the testator's brothers and sisters, share and share alike, or their heirs. That this last clause refers to the real estate alone must be inferred not only from the fact that it appears in the will directly in connection with the disposition of the real estate, but also from a consideration of the antecedent provisions. If all of his personal property were to be sold immediately after his death, under the seventh clause of the will, then the whole scheme of the disposition of his personal estate would fail, and all the legacies, general and specific, contained in the second, third, fourth and fifth clauses of his will would be of no force and his scheme for the disposition of his personal estate would be entirely destroyed. It is not reasonable to suppose that it was the testator's intention that if his daughter died in his lifetime all provisions for the disposition of his personal estate should fail, and the legacies given by the second and third clauses of the will to his sisters and to his brother Frank and to Elder Nance, which would have been taken out of the personal estate bequeathed to his daughter if she had lived, would be revoked and divided among his brother and sisters or their heirs under the seventh clause of the will. Those legacies were intended to be paid in any event, and if so, then the expression "all my property," in the seventh clause of the will, could not refer to his personal estate. Clearly, therefore, it must be held that the gift over in case of the death of his daughter did not refer to the testator's personal property or to his daughter's death in the testator's lifetime, but referred to his real estate, only, and was intended to take effect, in accordance with the established rule which has been stated, upon her death at any time, whether before or after the death of the testator, without issue.

The testator by the sixth clause of the will attempted to impose upon the devise of the real estate a restriction of the enjoyment of the estate in the farm by the devisee to the income from it until she should attain the age of thirty years and a restraint of her power of alienation of any part of the real estate until she should "have full power to sell the same." The devise was of the fee simple in the real estate, whether it remained in Stella M. Clark and her heirs or should pass to the other devisees by way of executory devise, and the attempted limitation of the right of enjoyment of the estate or the right to alienate it, which are incidents pertaining to the ownership of the fee, was repugnant to the devise and therefore void. (*Askins* v. *Merritt,* 254 Ill. 92; *McIntyre* v. *Dietrich,* 294 id. 126; *Randolph* v. *Wilkinson,* id. 508.) It was, however, evidence of the wish and intention of the testator to postpone his daughter's power of alienation of the estate until she should have full power to sell the same. The word "full" is the important word in this phrase, by which the testator meant to express the idea of the right to alienate in fee simple, free of restrictions and conditions. The appellants and the appellees agree that this is the meaning of the phrase. The testator doubtless supposed that the restraint upon alienation which he had imposed was valid and could be enforced. He also knew that by the seventh clause of his will he had imposed a condition that if his daughter should die without issue the real estate devised to her should be sold and the proceeds divided among his brothers and sisters or their heirs, and that this condition would prevail throughout her life unless the condition should become impossible by the birth of a child. So long as she was living and without issue it could not be known whether she would die without issue or not. Whether she would die without issue could be determined only by the birth of issue or her death without issue. Therefore the expression "full power to sell" must have referred to the condition of "death with-

out issue" as well as to the other restrictions which he sup-
posed he had imposed on his daughter's power to convey.
The provision that any mortgage or any paper that will in
any way entail the real estate is to be void until she shall
have full power to sell the same necessarily implied that the
testator supposed that the devisee would not take by the will
at once full power to sell, and also that she would, or might
at some time during her life, have such full power. She
could, however, acquire that power only through the birth
of issue, rendering the happening of the event upon which
the executory devise depended (death without issue) im-
possible. The testator must therefore have had in mind
the birth of issue of his daughter as the event upon the
happening of which she would have the full power to sell
the real estate.

The appellees contend that whether or not the restric-
tions attempted to be imposed by Charles A. Clark by the
sixth clause of his will, of the alienation by his daughter
of the real estate devised, are valid, it was still the intention
of the testator to impose temporary restrictions upon her
free alienation; that the period during which he desired
such restriction to exist was until she should reach the age
of thirty years, and that the words "death without issue"
were intended to refer to the time when the devisee would
hold her estate free from all attempted restraint on the part
of the testator. But as we have held that the will imposes
a restraint at least until the birth of issue this argument
loses its force. The provisions of the will attempting to
restrain the power of conveyance for a temporary period
did not change the estate devised, which was a defeasible
fee simple. Even if the attempt to restrain the power of
alienation were valid, her estate was still a fee simple, in-
defeasible except by her death without issue, and the re-
striction did not affect the character of her estate. It would
continue the same throughout her life and by the birth of
issue, if that event should occur, making it impossible for

the condition to happen, would become indefeasible. The restraint upon conveyance had no relation to the estate granted or to the limitation over upon the happening of the condition upon which the gift over depended, and therefore furnished no basis for the presumption that the testator's attempted limitation of the estate over upon death without issue referred to death during the period of his attempted restriction, and as that event never occurred the full power to sell the real estate never arose. It was the manifest intention of the testator in his scheme for the disposal of his real estate that in the event of his daughter's death at any time without issue his real estate should go to those of his own blood, his brothers and sisters or their heirs, and his temporary restriction of her manner of enjoying or power of conveying the estate cannot reasonably be considered as evidence of an intention to change the meaning of the words "death without issue" from "death at any time" to "death during the period of restricted enjoyment and restricted power to convey."

The appellees further contend that in any event the decree is right as to the town property, because it was sold under a valid power contained in the will. They reach this conclusion for the reason, as they say, that the power to sell the town property at any time within two years after the testator's death and the prohibition of any sale until the devisee shall have full power to sell the same are apparently inconsistent, that it is evident from the will itself that the testator has not accurately expressed his meaning, and it is also apparent what words he has omitted or misused, that the words omitted or misused may be supplied or changed to effectuate the intention as collected from the context and the surrounding circumstances, and that in view of the other language of the will and the plain intention to be gathered from them, the expression "the town property she may sell at any time within two years after my death," must be read "the town property she may sell at any

time except within two years after my death," or, "the town property she may sell at any time two years after my death." There is nothing in the will to justify the inference of such intention. The testator apparently thought it desirable to convert the town lots into farm property, and to enable his daughter to do that he authorized the sale of the town property. He apparently also thought that this change in the property should be accomplished within two years after his death, and the provision of the will authorizing the sale of the town lots was apparently inserted in the will for this purpose. The authority was doubtless limited to two years because he thought if the change was to be made it should be made promptly. The life insurance mentioned in the will consisted of two policies payable to his daughter, the proceeds of which amounted to $4250.61. This sum was no part of the testator's estate, but his apparent object in authorizing the sale of the town property was to enable his daughter, with the proceeds of the sale and the proceeds of the insurance policies, to buy eighty acres of land. It is unnecessary to consider the effect of the general restriction of alienation of any of the property upon this provision of the will. No sale was made within the two years mentioned in the will. The power given to the devisee to sell the town lots in fee simple absolute was not incident to her defeasible fee simple estate but was an independent power, which did not enlarge her defeasible estate into an absolute estate, and it was not exercised. Its mere existence did not destroy the executory devise. The power not being exercised, the limitation over took effect upon her death without having had issue. *Forbes* v. *Forbes,* 261 Ill. 424; *Koeffler* v. *Koeffler,* 185 id. 261; *Friedman* v. *Steiner,* 107 id. 125.

The decree is reversed and the cause is remanded to the circuit court, with directions to overrule the demurrers.

*Reversed and remanded, with directions.*