(No. 30658.— )

BESSIE L. STAGG *et al.,* Appellees, *vs.* DANIEL B. PHENIX *et al.*—(BARDWELL D. PHENIX, Appellant.)

*Opinion filed September 24, 1948.*

DAILY, J., took no part.

BRIAN & WILSON, of Toulon, for appellant.

RAYMOND A. LIGGETT, of Toulon, and HARRY C. HEYL, of Peoria, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

Plaintiffs, appellees, filed a complaint in the circuit court of Stark County to construe the joint will of Daniel B. Phenix and Jane A. Phenix. The only point involved in the case is the character of the estate given by the will to Bardwell D. Phenix, one of the children of said joint testators. The circuit court decreed that under the said last will Bardwell D. Phenix took a conditional fee in the real

estate under the third clause of said will, and a like conditional interest in the personal property bequeathed by the sixth clause of said will. The contention of Bardwell D. Phenix that he was the absolute owner in fee in said property described in said clauses was overruled by the court. A freehold being involved, the cause comes directly to this court.

The will in question was executed on September 26, 1893. The testators, between them, owned approximately eight hundred acres of land. The first clause of the will provided for a life estate in the survivor of the two testators. Jane A. Phenix died in 1906, and Daniel B. Phenix died in 1913. Their sole surviving heirs were two sons, Bardwell D. Phenix and William H. Phenix, both of whom were devisees under the will. The first paragraph of the will provided that the survivor of the testators was to have charge and control of all of the property of both testators during his or her natural life, and that no gift or devise mentioned in the will should take effect until after the death of both testators.

It is conceded by both sides that the only dispute involved is the interest given by the will to Bardwell D. Phenix, by the third and sixth clauses. The third clause is as follows: "We give and devise to our son, Bardwell D. Phenix the following described real estate, [describing the real estate]; Provided, that if the said Bardwell D. Phenix shall die without issue, leaving surviving him no child or children as his heir or heirs, then upon his death all the said described real estate devised to him shall go, and we give and devise the same, to the children of our son William H. Phenix then living, or that may be thereafter born." The sixth clause provides: "We give and bequeath, and each of us gives and bequeathes, respectively, unto our son Bardwell D. Phenix one-half (½) of all our personal property, * * * Provided, that if the said Bardwell D. Phenix shall die without issue, leaving sur-

viving him no child or children as his heir or heirs, then at his death all the said personal property given and bequeathed to him shall go, and we give and bequeath the same, to the children of our son William H. Phenix then living, or that may thereafter be born."

Jane A. Phenix died June 21, 1906, owning a part of the real estate involved. Her will was duly probated. Daniel B. Phenix died January 20, 1913, seized of a part of the real estate described in said will. The son William H. Phenix died November 15, 1940, and Bardwell D. Phenix is still living, and has no wife or children, and never had a child or children. The plaintiffs are Bessie L. Stagg and Aura A. Timmons, both children of William H. Phenix, deceased, who filed their bill for partition and for a construction of the clauses of the will of Daniel B. Phenix and Jane A. Phenix, specified above. The will of Jane A. Phenix and Daniel B. Phenix designated Harmon Phenix, a brother of Daniel B. Phenix, deceased, and Bardwell D. Phenix as executors, with the provision that in the case of the death of either Daniel J. Phenix, a son of Harmon Phenix, was to take the place of such deceased executor.

The principal question involved and argued concerns the construction of the proviso in the third and sixth clauses relating to the death of Bardwell D. Phenix without issue. The trial court held that the proviso operated as a condition, in effect, that at the death of Bardwell D. Phenix at any time without issue, or the descendants of issue, his estate would come to a complete end, and the fee-simple title vest in the children or descendants of children of William H. Phenix. It is the contention of the appellant, Bardwell D. Phenix, that the testators intended that the proviso concerning the death of Bardwell D. Phenix would become operative only in the event of his death prior to the death of the surviving testator; or, in any event, prior to the death of William H. Phenix, and, since that event

did not occur, he contends that he has a fee-simple estate by reason of his survival of both testators and William H. Phenix.

The entire discussion in the briefs centers around the construction given by this court to certain words used in wills in which the time of the death of a beneficiary was not expressly fixed or stated, and which depended upon construction of the language in the will to find what time of death was intended. Appellant relies strongly upon the cases of *Lachenmyer* v. *Gehlbach,* 266 Ill. 11, and *Smith* v. *Shepard,* 370 Ill. 491. Since the particular issue involved in the present case concerns what time the testators intended when referring to the death of Bardwell D. Phenix, we will, for the purpose of simplification of the issues involved herein, point out the rule as set forth in *Smith* v. *Shepard,* 370 Ill. 491, since that case refers to many other cases cited in the briefs of both parties. The case cited, we believe, accurately reflects the rule in force in the construction of a will as to fixing the intent of the time of death referred to by a testator, where the intention of the testator is not clearly expressed in the language of the will.

The *Shepard case* lays down the tests as follows:

"(1) Where, by will, an estate is devised to one person *simpliciter,* and in case of his death to another, the contingency of 'his death' refers to the death of the devisee during the lifetime of the testator, and such devisee has an absolute estate in fee simple if he survives the testator. *Evans* v. *Van Meter,* 320 Ill. 195; *DeHaan* v. *DeHaan,* 309 Ill. 323; *Williamson* v. *Carnes,* 284 Ill. 521; *Tomlin* v. *Laws,* 301 Ill. 616; *Kohtz* v. *Eldred,* 208 Ill. 60; *Fishback* v. *Joesting,* 183 Ill. 463; *Knight* v. *Knight,* 367 Ill. 646.

"(2) Where, by will, an estate is devised to one person, and in case of his death to another, if the contingency of 'his death' is coupled with a condition such as 'without

issue,' 'without heirs,' 'without heirs of his body,' 'without husband or wife,' or similar conditions, making the contingency upon which the estate vests, in itself uncertain, the devise over to the ultimate beneficiary takes effect upon the death of the first taker, under the circumstances indicated, at any time, whether before or after the death of the testator. *Liesman* v. *Liesman,* 331 Ill. 287; *Millikin Nat. Bank* v. *Wilson,* 343 Ill. 55; *Risser* v. *Ayers, supra.* [306 Ill. 293.]

"(3) There is another class of cases where the devise is not immediate but is of a future interest to take effect in possession upon a termination of an intervening particular estate. In such case, unless the will shows the testator intended to refer to a different date than the termination of the particular estate, the rule is that the gift over will take effect if the contingency happens at any time before the termination of the particular estate, and death without issue means death *without issue* before the termination of the particular estate. *Lachenmyer* v. *Gehlbach,* 266 Ill. 11; *Sheley* v. *Sheley,* 272 Ill. 95; *Welch* v. *Crowe,* 278 Ill. 244; *Fulwiler* v. *McClun, supra,* [285 Ill. 174]; *Johnson* v. *Boland, supra,* [343 Ill. 552]; *Morris* v. *Phillips, supra,* [287 Ill. 633]; *Risser* v. *Ayers, supra,* [306 Ill. 293]; *Clark* v. *Leavitt, supra,* [330 Ill. 350]; *Baird* v. *Garman,* 349 Ill. 597."

The appellant contends that his case falls within rule 3, as set out in the *Shepard case,* and that the proviso for the gift over to the children or descendants of William H. Phenix operates only in the event of his (Bardwell's) death, without issue, *before the termination of the life estate* of the surviving testator. On the other hand, the appellees suggest that the second division of the rule is applicable, and therefore the time of death of Bardwell D. Phenix fixes the time of the devise over, and since Bardwell D. Phenix is still living the owners of the estate cannot be definitely ascertained until his death.

It seems to us that while counsel for both sides have shown great energy and learning in collecting the cases applicable to situations where the intent of the testator is doubtful, or cannot be ascertained from the language used, and hence a presumed intent must be inferred from the use of certain language, yet a full consideration of all of the language of the will discloses no necessity to resort to a presumed intention, as the testators' actual intention seems manifest. In the *Shepard case* the following is also to be found: "The intention of a testator manifested in his will is determined in two ways. One, by ascertaining his actual meaning from the words employed, to which all rules of construction give way, and the other, by finding his presumed intention gathered by the application of rules of construction applicable to all cases where the meaning is obscure, doubtful or uncertain." This language is justified by many prior decisions.

In *Desmarteau* v. *Fortin,* 326 Ill. 608, we said: "The general and fundamental rule for construing wills is, that the intention of the testator, to be determined from the entire will, is to be given effect unless contrary to public policy or established rules of law." And in *Hartwig* v. *Heberling,* 364 Ill. 523, we declared: "The purpose of construing a will is to ascertain the intention of the testator and to give effect to that intention. [Citations] In interpreting a particular provision of a will the law authorizes and requires a consideration of the whole will, and the testator's intention will be arrived at from a consideration of all the language he has used, in whatever portion of the will that language may be found. [Citations] All rules of construction of wills yield to the intention of the testator clearly expressed. Technical rules will not be permitted to defeat such intention when it is not in violation of a rule of law or public policy. [Citations] While decisions involving wills may serve to guide this court with respect to general rules as to the construction to be placed upon

the will under consideration, yet unless the case be in every respect directly in point the decision will not control but at most will only be persuasive. [Citations.]"

The intention of the testator being the ultimate object of our research, it is plain that language used in decisions construing other wills, where construction is necessary to find the intention of the testators, will not control our decision if we are able to ascertain a lawful intention upon the part of the testators in the actual language used by them in disposing of their property. As was stated in *Cahill* v. *Michael*, 381 Ill. 395, "The question always is, what is the meaning of the words used in the will? [Citations] And above and beyond these general rules, if the intention of the testator manifested in the form required by law is clear, the court will uphold it, even though a different result would be reached by rules of construction applying to specific provisions of the will."

This leads us to an examination of the language used in the joint will of Daniel B. Phenix and Jane A. Phenix to ascertain whether, from the whole will, a manifest intent upon their part can be determined. After an examination of the will in the instant case we first observe that both testators adopted the same language, and undoubtedly each intended that this language should have one and the same meaning. It would be unreasonable to say that with respect to Jane A. Phenix the will meant one thing, and in respect to Daniel B. Phenix it meant another thing. Yet, if the construction sought by appellant were adopted it would seem that such result would follow.

Jane A. Phenix died first. The will gave a life estate in all of her property to her husband, Daniel B., and, therefore, the appellant argues that in respect to the will of Jane A. it might be logically argued that the third subdivision of the rule stated in the *Shepard case* would apply, and that the death of Bardwell D. Phenix referred to in such will meant death before the death of the life tenant,

Daniel B. However, after the death of Jane A. there could be no life estate in the property of Daniel B., whose name is signed and attested to the same words used by Jane A., and therefore, since when he died there was no life estate effective, at least, as to his property, it could be logically claimed that the second subdivision of the rule set out in *Smith* v. *Shepard* would be applicable, and that the death of Bardwell D. Phenix without issue would mean death at any time, whether before or after the death of his father and mother. Since neither of the testators could know the time of death of the other, although inevitable, the construction sought by appellant gives a sort of oscillating or ambulatory meaning to their will, depending upon who died first, based entirely upon a presumed meaning, as in cases where the actual intent is not ascertainable. This difficulty can be avoided if the actual intention of the testators can be found from the language used in the will, thus making presumed intention from the use of certain words wholly inapplicable.

The precise question to determine is whether or not the testators intended the gift over, upon the death of Bardwell D. Phenix without issue, to become effective when Bardwell D. died at any time, regardless of whether it was before or after the death of the testators, or on the death of the testator who survived the other, or, on the other hand, was it intended by them to limit the executory devise over to the particular circumstances of Bardwell D. Phenix's death, without issue, prior to a particular time, such as prior to the death of the surviving testator? As Bardwell D. has survived both testators the first construction would make the property referred to in clauses three and six of the will subject to the executory devise over in favor of the children of William H. Phenix, whereas the second construction would result in the elimination of such executory devise over, and place a fee-simple title in Bardwell D. at the present time.

From an examination of the entire joint will we find the following matters therein which have a bearing upon the intention of the testators: (a) The language of the proviso refers to the death of Bardwell D. Phenix without any specification as to the time of his death. Literally, this language could apply to the death of Bardwell D. at any time, whenever the death occurred. The proviso contains no limitation as to the time of death, and therefore the ordinary meaning of such language, aside from presumed intention, arising under special circumstances, would mean death at any time. (b) The clause is expressed in conditional language, such as, "if the said Bardwell D. Phenix shall die without issue," etc., indicating an uncertainty in the minds of those executing the will as to whether the condition would ever be operative. Since the death of Bardwell D. is by the language of the testators coupled with the condition of death without issue, the proviso is uncertain of happening in itself, and it is unnecessary to find an uncertainty as to the time of death, as in the case of a gift over upon his death without condition. (c) The proviso in the sixth clause uses the following language: "if the said Bardwell D. Phenix shall die without issue, leaving surviving him no child or children as his heir or heirs, *then at his death* all the said personal property given and bequeathed to him shall go, and we give and bequeath the same, to the children of our son William H. Phenix *then living,* or that may thereafter be born." The language of the third clause is identical, except that the reference is to real estate, and the phrase "upon his death" is used in place of "at his death."

The testators have thus by their express language stated the time the property is to go to the children of William H. Phenix to be at the time of the death of Bardwell D. Phenix. This could not refer to any time during the lives of either of the testators. It could not refer to the lifetime of the testator first dying, for the reason that all the provisions

of the will were not yet effective because of the survival of the other. It is not intended to refer to the lifetime of the surviving testator for the reason that the first paragraph of the will provides "no gift, devise or bequest hereinafter mentioned shall take effect until the death of both of us." The testators have therefore by their own language eliminated this case from the class of cases referred to in subdivision 3 of the rule set out in *Smith* v. *Shepard,* where the future interest takes effect in possession upon a termination of an intervening particular estate. They have by their language also fixed the class to be those "children then living," meaning those living at the death of Bardwell D. Phenix. Any child dying before Bardwell D. could not take under the language used, and it would be unreasonable to construe the intention of the testators to fix the time of death at an earlier date, when the person to whom the gift over is to be made could not be determined.

Examining other provisions of the will it seems clear that it was drafted upon the assumption that Bardwell D. Phenix would survive the testators. In clause 2 it is provided that upon the death of both of the testators certain real estate was devised to Daniel N. Phenix, a nephew. He was restrained from disposing of the property until he was twenty-five years of age, and thereafter, in case he desired to sell, was directed to give Bardwell D. Phenix the first opportunity to purchase. This assumes the survival of Bardwell D. after the death of both of the testators, because, of course, Daniel N. would have nothing to sell unless both of the testators were deceased and the will had become effective.

In the seventh clause of the will Bardwell D. Phenix was named as trustee of certain personal property which was to be administered after the death of both testators. Since the gift in the seventh clause was prevented from taking effect until after the death of both testators, by reason of the provisions in the first clause that none of

the gifts should take effect until after the death of both testators, and, again, in the eleventh clause of the will Bardwell D. Phenix was named as one of the executors, it follows, therefore, that the testators must have assumed that he would survive them, and therefore never could have meant that the time of death of Bardwell D. Phenix would be before the death of either of the testators.

The appellant also argues that if the will is not construed as intending the time of Bardwell D. Phenix's death to be prior to the death of the testators it should nevertheless be construed as meaning prior to the time of the death of William H. Phenix. There is nothing in the will to express such an intention, as William H. has no interest whatever, contingent or otherwise, in the property devised in the third and sixth clauses of the will, which is the part of the will in litigation. Appellant bases his argument upon the language of the proviso giving the property to the children of William H. Phenix "then living, or that may thereafter be born," and says that such quoted words show that the testators assumed the death of Bardwell D. Phenix before William H. because the latter's children would have to be born during the lifetime of William H. Such language providing for after-born children contains no implication that the living children and the after-born children of William H. Phenix are intended to be deprived of their interest in the event that Bardwell D. Phenix survived William H., and yet such would be the result of appellant's construction of the language of the third clause of the will.

On the other hand, we believe that the testators clearly intended to make provision for the after-born children, in addition to living children, in the contingency of the death of Bardwell D. Phenix at any time without issue. The devise to the living children of William H. Phenix was to a class, which by the language of the will would be determined at the time of the death of Bardwell D. Phenix. Such class, however, was subject to being opened up after

the death of Bardwell D. Phenix to permit the sharing of after-born children of William H. Phenix, if any.

From the foregoing analysis of the provisions of the will in question it seems to us that reference to decisions bearing upon a presumed intention are without value, when the actual intention can be readily determined. As a matter of fact, the case of *Smith* v. *Shepard,* and every cased cited under rule 3 therein, were cases in which the actual intention of the testator as to the time of the death of certain devisees could not be actually ascertained, and therefore the intent was determined from certain presumptions arising from certain fixed rules applying to such cases. They do not apply here.

There is nothing illegal òr against public policy in the actual intention of the testators. Bardwell D. Phenix was an old man, who had been twice married, and had no issue. William H. Phenix had living children. The design of the testators was to give the entire use of the property upon the death of either to the survivor. The provisions with respect to the two brothers were in effect identical, in that neither was given a fee outright, but the testators desired the property ultimately to go to the issue of the two brothers, and, in the event Bardwell D. Phenix died without issue, to the children of William H. Phenix.

All of the provisions of the will indicate an intention that the property devised to Bardwell D. Phenix, described in the will, should be subject to defeasance upon his death without issue, "leaving him surviving no child or children as his heir or heirs," in which event the share of Bardwell D. Phenix became vested in the children then living of William H. Phenix, as described in the third clause of the will. The same construction will be applied to the provisions of the sixth clause of the said will.

We might remark that in construing a will the intention is, to be gathered from the whole instrument. If the intention may be gathered from its language· without refer-

ence to rules of construction, there is no occasion to use the latter. Where the use of rules as to a presumed intention so twist and warp the evident meaning of a will as to render it ambiguous or unreasonable, and when, on the other hand, the words used in their ordinary sense are plain and their meaning clear, construction demands the use of the plain intention over the presumed intention, which is fixed by rules used only where the actual intent cannot be ascertained.

The chancellor properly construed the joint will of Daniel B. Phenix and Jane A. Phenix, in consequence of which the decree of the circuit court of Stark County is affirmed.

*Decree affirmed.*

Mr. Justice Daily took no part in the consideration or decision of this case.