DE KORWIN v. FIRST NAT. BANK OF
CHICAGO et al.
General No. 43 C 1043.

United States District Court
N. D. Illinois, E. D.
May 19, 1949.

Charles R. Aiken and Homer F. Carey, Chicago, Ill., for plaintiff.

J. F. Dammann, William B. McIlvaine, Jr., W. Philo Gilbert, Sidney K. Jackson, George Hale, Harold V. Amberg, John W. Kearns and Frank L. Paul, Chicago, Ill., for defendant First Nat. Bank.

Cranston Spray and Winfield T. Durbin, Chicago, Ill., for defendant Gwendolyn Koch.

David A. Watts and Charles T. Martin, Jr., Chicago, Ill., for certain other defendants.

Howard D. Moses and Charles G. Culver, Chicago, Ill., for guardian ad litem.

William G. Blood, Chicago, Ill., Chandler P. Ward, Los Angeles, Cal., and Frank B. Sanders, Chicago, Ill., for certain general guardian.

Edwin C. Austin, Kenneth F. Burgess, Howard Neitzert and Lloyd S. McClelland, Chicago, Ill., for certain general guardian.

Harry S. Ditchburne, Chicago, Ill., for trustee of persons not in being.

Thomas Dodd Healy, Chicago, Ill., for special trustee.

IGOE, District Judge.

The subject matter of this litigation is the testamentary trust of Otto Young, who died in 1906. The trust assets, consisting of cash, securities and commercial Chicago real estate, valued by the parties at from thirty-five to eighty million dollars, are

presently in the hands of the First National Bank of Chicago.

The suit, commenced in 1943, on behalf of the heirs of certain remaindermen under the trust, requires a construction in several respects of Otto Young's will. Upon that construction plaintiff asks an accounting and for the appointment of a successor trustee. Defendants to the original complaint were the First National Bank, as custodian of the trust properties, all legatees named in and numerous beneficiaries under Otto Young's will, including some of the heirs represented by plaintiff.

A guardian ad litem for the minor defendants and a trustee of persons not in being were appointed at the inception of these proceedings and have represented their wards throughout the course of the litigation. General guardians for issue of certain deceased grandchildren, appointed by the Surrogate's Court in New York and by the Superior Court in California, although without authority to act in this jurisdiction and, due to their foreign citizenship, apparently ineligible to qualify as guardians in Illinois, were they to make application in that behalf, were, nevertheless, as a matter of judicial comity permitted to appear in this cause and be heard.

While the action was pending the plaintiff, Joseph De Korwin, died and his widow was substituted in his place. For convenience, as was done in the Court of Appeals, the substituted party will be referred to as plaintiff.

At the first trial, after issue joined, the First National Bank and other defendants petitioned the District Court for a dismissal of the cause on jurisdictional grounds. They asserted that certain of the defendants should be transported to the plaintiff's side of the controversy and that upon such realignment total diversity of citizenship disappeared. Plaintiff thereupon moved to dismiss out those defendants who were dispensable parties and for leave to file an amended complaint omitting them. The chancellor then hearing the case refused leave to voluntarily dismiss and amend the complaint and dismissed the suit for want of jurisdiction. The Court of Appeals reversed, however, holding that this Court had jurisdiction and remanded for further proceedings. De Korwin v. First Nat. Bank of Chicago, 7 Cir., 156 F. 2d 858. Certiorari was denied First National Bank of Chicago v. De Korwin, 329 U.S. 795, 67 S.Ct. 481, 91 L.Ed. 680.

The pertinent facts are not in dispute. Otto Young died November 30, 1906, leaving him surviving his widow and four daughters. By his will he made several bequests to charitable institutions and created certain annuities for collateral kindred, which provisions are not here involved. The residue of his estate was devised to the First Trust and Savings Bank in trust. Testator's widow and daughters or their issue were given the bulk of the trust income during their lives, and the principal was bequeathed to his grandchildren. The trust would continue until the death of testator's last surviving daughter or until the testator's youngest surviving grandchild reached the age of twenty-one, whichever happened last.

By the time Otto Young died his daughters had borne seven children. Eleven additional grandchildren of the testator were born after his death, making a total of eighteen. Some dispute originally existed here as to whether a nineteenth grandchild was stillborn or had died in infancy, but that issue, along with many other incidental questions, was eliminated at pretrial hearings and conferences, during which plaintiff's action was limited to two basic claims.

The testator's widow, Ann Elizabeth Young, died on March 26, 1916, precipitating a controversy with respect to trust income then held by the First Trust and Savings Bank as trustee. The will provided for an annual payment of $100,000 to Mrs. Young during her life, with a stipulation that should one-third of the net trust income exceed such fixed sum in any year the widow would be entitled to payment of the overage upon demand seasonably made. At the widow's death the trustee had in its hands as accumulated and undistributed income some $2,500,000. The executor of Ann Elizabeth Young's estate attributed such accumulation to a refusal by the trustee to properly account

and pay over to testator's widow one-third of the net income in accordance with the demands made from time to time during her lifetime. Testator's daughters asserted that the trustee had been erroneously computing the trust income as a result of certain charges being made to depreciation, and they claimed that 88% of the accumulation should be distributed to them under terms of the will. The trustee disputed these claims, and in February of 1917, the First Trust and Savings Bank filed a bill in the Circuit Court of Cook County to settle its accounts and for instructions as to the correct method of computing and distributing the trust income. Crossbills were filed by the widow's executor for recovery of the additional trust income due her and by testator's daughters for payment to them of the accumulated fund. The trustee replied that the excess net income in its hands should be treated under a correct construction of the will as trust principal. An accounting was had before a master on general reference, and on April 20, 1922, a final decree was entered in the Circuit Court wherein the will was construed in respect of the issues before it, settling the trustee's accounts, and instructing the trustee concerning proper computation of trust income and as to its allocation to net income for distribution to the income beneficiaries and to trust principal. Certain specific errors in the trustee's accounts were pointed out and the cause was rereferred for calculation of the amounts due the widow's executor and to testator's four daughters. It was found by the decree that under a correct construction of the will no part of the income accumulated prior to the widow's death was payable to the testator's daughters and that the undistributed fund was properly regarded as trust corpus. The trustee's accounts from inception of the trust until March 26, 1916, were settled and approved. The costs and expenses of the suit, including an allowance of attorneys' fees, were to be fixed on the rereference, and jurisdiction of the cause was retained to pass on the supplementary master's report and for entry of a supplemental decree in that connection. On June 15, 1922, the master's report on rereference was con-firmed by the Circuit Court and the payment as costs of various expenses and fees was approved.

The testator's youngest daughter, Laura Elizabeth, died in 1924, leaving two children. Selma Cecile, his oldest daughter, died in 1935, leaving three children. The third daughter, Catherine Osborne, died in 1942, leaving five children. Otto Young's second daughter, Marie Julia, born in 1877, survives, having had eight children. The youngest of testator's grandchildren, Catherine Wickes Alexander, is now twenty-six years of age.

Of Otto Young's eighteen grandchildren, four have died, two without issue and two leaving children. Louis Graveraet Kaufman, Jr., son of Marie Julia, who was born in 1905, died in 1934, leaving one child, Louis Graveraet, III., who is presently about sixteen years old. Samuel Klump Martin, III., son of Laura Elizabeth, who was born in 1908, died in 1935, leaving one child, Samuel Klump, IV., at present about nineteen years old. Otto Young Heyworth, son of Selma Cecile by her first marriage, who was born in 1897, died in 1936, leaving as his only heirs his widow, father, sister, and half-brother. Stanislaus de Korwin, sometimes known as Stanley Young, son of Selma Cecile by her second marriage, who was born in 1913, died in 1940, leaving as his only heirs his widow, father, and half-sister.

On February 11, 1929, the First Trust and Savings Bank of Chicago, named as trustee under Otto Young's will, was consolidated with the Union Trust Company and the consolidated corporation became known as the First Union Trust and Savings Bank. The consolidated bank took over the administration of Otto Young's trust without appointment by any court. On July 17, 1933, the First Union Trust and Savings Bank was merged into the First National Bank of Chicago, and since that time the First National Bank has been acting absent judicial sanction as trustee of Otto Young's estate.

The original plaintiff, Joseph de Korwin, as father of Stanislaus de Korwin, a grandchild of Otto Young who had died intestate without issue, made written de-

mand, in March of 1943, on the First National Bank of Chicago for "information as to the nature and extent of the principal of the Otto Young trust estate, together with advice as to the identity and whereabouts of the other beneficiaries and as to disposition of the income from such trust." The First National Bank rejected plaintiff's request for information concerning the trust on the ground that he did "not have any interest in the estate of Otto Young, deceased." On November 2, 1943, Joseph de Korwin, a citizen of Poland, and as such an alien, instituted this proceeding against the First National Bank, a citizen of Illinois, and other beneficiaries, citizens of several States, to compel an accounting of the trust administration and for the appointment of a successor trustee.

At the trial before this court, plaintiff elected to stand on Counts II and IV of the second amended complaint, amounting to a voluntary dismissal of the demands embodied in the first and third counts. As a result, plaintiff's action has been narrowed to two fundamental claims: (1) that the devises of Otto Young to his grandchildren constitute vested remainders; and (2) that a successor trustee of Otto Young's estate has never been authorized to act. The determination of both basic issues necessitates a construction of Otto Young's will. All parties agree that the issues are controlled by the law of Illinois.

The defendant Bank and others have pleaded certain defenses as a bar to the action, or a part of it, which should be first considered.

## I.

### The Special Defenses.

The Bank joined in by codefendants has interposed through its pleadings six special defenses. Its claim that the complaint is legally insufficient, the sixth special defense, appears from the briefs to have been abandoned. The first, third and fifth special defenses go to the question of jurisdiction. The second is a plea of res judicata, and the fourth amounts to a plea of estoppel by verdict.

The challenge to the jurisdiction of this court under the original complaint for lack of diversity of citizenship, the first special defense, was not sustained. DeKorwin v. First National Bank of Chicago, 7 Cir., 156 F.2d 858, certiorari denied 329 U.S. 795, 67 S.Ct. 481, 91 L.Ed. 680. That ruling is no longer open to impeachment. Likewise adjudicated by the decision of the Court of Appeals is the claim in the fifth special defense that indispensable parties are not now before the court.

The third special defense, to the effect that the Cook County Circuit Court decree of 1922 retained perpetual jurisdiction over the trust estate to the exclusion of this court, goes also to the question of jurisdiction and as such is settled by the judgment of the Court of Appeals. People v. Winston, 399 Ill. 311, 77 N.E.2d 664; Schneiderman v. Interstate Lines, 401 Ill. 172, 81 N.E.2d 861.

That a suit to construe a will and for an accounting is one in rem and that it draws to the court which entertains it jurisdiction over the res, as completely as if it were in custodia legis, can not be denied. But this does not dispose of the issue raised here, for the application of the rule just announced goes no farther than the limits to which judicial power can extend. The rule presupposes the existence of a justiciable matter, otherwise the court is without power to act at all. The rule also presupposes that the judicial power has been properly invoked. It is clear that the judicial power can not extend to the determination of hypothetical controversies, much less can it extend to those which do not exist at all. Not everything falls within the purview of judicial power. There must be a controversy before the judicial power can be invoked, and this limitation upon judicial action flows from the constitutions, both State and Federal. Assuming, without deciding, that the courts of Illinois possess under its constitution a freedom which the Federal Courts may not have by reason of such restrictions as the words "cases" and "controversies" in Article III of the Federal Constitution, no one will contend that the judicial power can be made to extend to non-existent controversies. At this point limitations upon the courts, both State and Federal, become costitutional. It must be plain that merely because a court once had

jurisdiction over both the parties and the subject matter it could not retain them for years to come in order to settle disputes which might arise in the future. The permissible limits of judicial power can not support a retention of jurisdiction beyond a settlement of the justiciable issues before the court and the disposition of matters necessarily incident thereto, except to carry its decree or judgment into effect. This limitation is recognized in the cases. Tudor v. Firebaugh, 303 Ill.App. 452, 454, 25 N.E.2d 568; Cowdery v. Northern Trust Co., 321 Ill.App. 243, 252, 53 N.E.2d 43; Continental Ill. Nat. Bank & Trust Co. v. Kelley, 333 Ill.App. 119, 125, 76 N.E.2d 820; Warner v. Mettler, 260 Ill. 416; State ex rel. McManus v. Muench, 217 Mo. 124, 117 S.W. 25, 129 Am.St.Rep. 536, cited with approval in Continental Illinois Nat. Bank & Trust Co. v. Kelley, supra. See also: "Retention of Jurisdiction of Trusts by Courts of Equity," 28 Chicago Bar Record, 404.

Upon this branch of the case this court is firmly of the opinion that retention of jurisdiction by the Circuit Court of Cook County, if that is what was actually attempted, is without legal effect under the Illinois decisions. It is further of the opinion that any attempt by a court to retain jurisdiction to the asserted limits is void as infringing the constitutional limits of judicial power.

The second special defense is a plea of res judicata apparently as to the question of a violation of the rule against perpetuities and as to the issue of whether the remainder interests are vested or contingent. This plea has been carefully considered as a bar to this proceeding and found to be without merit.

Some of the parties to this litigation have charged that disposition of the trust corpus offends the rule against perpetuities. Plaintiff's claim in this respect was withdrawn. The court is of the opinion that disposition of the corpus of the trust under the terms of the "Sixth" article of the will does not infringe the rule against perpetuities announced in Corwin v. Rheims, 390 Ill. 205, 61 N.E.2d 40, and, as more particularly defined, in Chicago Title & Trust Co.

v. Shellaberger, 399 Ill. 320, 77 N.E.2d 675. The distribution of corpus in terms of shares to be determined numerically by the number of grandchildren born to the testator precludes such limitations from being remote within the doctrine of these cases.

The defendant Bank is not content to rest upon the decisions, alone, to sustain the gifts of corpus under the rule. Its second special defense purports, among other things, to show that this point is closed to inquiry by virtue of the decree entered in 1922 by the Circuit Court of Cook County. An examination of these proceedings discloses no determination as to the ultimate distribution of corpus but rather a disposition of certain accounting problems created largely by the death of the testator's widow, Ann Elizabeth Young. It is obvious that the issues there litigated could not and did not embrace any of the questions confronting the court in this litigation, and it is well settled that the operational effect of a judgment or decree is no broader than the issues presented for adjudication in the cause where such judgment or decree is rendered.

Moreover, the proceedings in the Circuit Court of Cook County were instituted by the First Trust and Savings Bank, the trustee named in the will of Otto Young. The defendant First National Bank of Chicago can not claim the benefits of that decree, whatever it may have determined and however conclusive it might be upon the parties to the suit in which it was rendered, unless it stand in privity with, or upon some principle of representation or otherwise was, a party to that suit. Unless the First National Bank was so identified with the prior litigation it can no more claim the benefits of that decree, regardless of what it decided, than it can be subjected to any burdens which it may have sought to impose. Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009, Ann.Cas. 1913 E. 875. The position occupied by the First National Bank of Chicago in relation to this estate, a matter hereinafter considered at some length, is not such that it can claim any benefit from the prior adjudication. This court is satisfied, however, that the

Circuit Court decree did not dispose of any issue now before it for determination.

The fourth special defense is a claim that the decree for separate maintenance entered in 1939 against Stanislaus de Korwin by the Circuit Court of Cook County in favor of Ruth Young, his wife, estops plaintiff from challenging the authority of the First National Bank to administer Otto Young's trust estate.

■■■■■ In her suit for separate maintenance, the wife of Stanley Young joined the First National Bank of Chicago as a defendant with her husband. The Bank now urges that the effect of the decree in that case was to bind Stanley Young, and through him the plaintiff in this case, to a finding there that the Bank was the trustee under the last will and testament of Otto Young, deceased. The findings of that decree are relied on by the Bank now to clothe it with full validity of status.

There is no suggestion in the record of the separate maintenance suit that the legality of the Bank's position in relation to the trust under the will was put in issue. It is doubtful that it could have been. For this reason, if for no other, the decree could not foreclose anyone upon such an issue.

But the Bank, to invoke this defense, has to sustain an even greater burden. Stanley Young and the Bank were co-defendants; there was no issue or controversy between them over the status of the Bank in relation to the testamentary trust, or otherwise. It is not easy to perceive how in this setting it may be claimed that gratuitous recitals in a decree could have such devastating vitality as against an unsuspecting co-defendant. The law does not permit such consequences. It is well settled that a judgment or decree settles nothing as to the relative rights or liabilities of co-plaintiffs or co-defendants, inter se, unless their hostile or conflicting claims were actually brought into issue, litigated and determined. Decisions to this effect extend over many years. Jones v. Koepke, 387 Ill. 97, 55 N.E.2d 154; First Nat. Bank v. Counselbaum, 320 Ill.App. 675, 51 N.E.2d 1001. Only in partition, where every party is an adversary under rules making compulsory the assertion of each party's interests, is this not so. Chap-

man v. Chapman, 256 Ill. 593, 100 N.E. 166. An examination of the record in the separation suit discloses that no issues were ever joined as to the First National Bank, since no answer was filed by it therein.

Finally, whatever effect the ruling by the Illinois Appellate Court in Re Estate of Young, 319 Ill.App. 513, 49 N.E.2d 742, holding that the decree in the separation suit was void as beyond the jurisdiction may be thought to have, it certainly can not be helpful to the Bank in supporting its position here.

This court concludes that the Bank can derive no aid from the separate maintenance decree.

## II.

### The Quality of Remainders.

■■■ The last will and testament of Otto Young consists of a will executed in December, 1905, and a codicil, not material here, executed in November, 1906, shortly before his death. While no section of the testator's will can be ignored in ascertaining his intention upon any question of construction, only two provisions are the particular concern of this controversy under the issues as they have been finally submitted for determination. The estate is an **unusually** large one. This, and the important legal problems presented have imposed upon the court a heavy responsibility, to which it is not insensible.

Disposition of the issue as to the quality and character of the remainder interests requires that the following testamentary provision be construed:

"Sixth:—When the last survivor of my daughters shall have deceased and the youngest surviving child of my daughters shall have attained the age of twenty-one (21) years all of said trust estate then remaining in the hands of said trustee shall be divided in equal shares between my grandchildren, the surviving issue of any deceased grandchild to stand in the place of and receive the share which such deceased grandchild would have been entitled to receive if then living."

The construction placed upon this language by plaintiff is that the testator intended "to create remainders which would

vest immediately in the grandchildren living at the death of the testator, open to let in afterborn grandchildren and vest in them successively at birth, and which would be divested as to the shares of those grandchildren only who should die leaving children before the determination of the life estate."

The Bank and other defendants contend "that the testator intended to give, and gave, and provided for the distribution of the corpus of his trust estate to those only of his grandchildren who might be living at the termination of the trust, and to any issue then living of a deceased grandchild."

Otherwise stated, plaintiff's position is that "all the grandchildren took a vested remainder in fee and the gift over to the children of any deceased grandchild was an executory devise." Defendants claim that "the distribution provided for with reference to the corpus of the trust estate was not a vested interest, but was an interest dependent upon the grandchildren surviving at the time of the termination of the trust estate and its distribution."

The foundation for this entire controversy is thus squarely presented: Are the gifts in remainder to Otto Young's grandchildren vested or contingent interests? Established rules for the construction of wills must guide the court in deciding this basic issue. Differentiating between vested and contingent remainders under the law of future interests seems invariably to have been fraught with difficulty, and as attested by the extensive arguments made here this case is no exception. The course of this litigation has been marked by the cooperative conduct of all counsel in the avoidance of unessential pleadings and needless proof, and able and exhaustive briefs have been submitted thoroughly presenting the several problems involved.

The cardinal rule of testamentary construction is to ascertain and give effect to the intention of the testator, but that intention must be ascertained from the words of the will. Knisely v. Simpson, 397 Ill. 605, 609, 74 N.E.2d 695; Wagner v. Clauson, 399 Ill. 403, 412, 78 N.E.2d 203, 3 A.L.R.2d 672. Decisions in other will construction cases are not controlling, Gla-

ser v. Chicago Title & Trust Co., 393 Ill 447, 456, 66 N.E.2d 410, unless there is a substantial identity of expression in which event the cited case may be regarded as a precedent. Miller v. Wick, 311 Ill. 269, 277, 142 N.E. 490, 30 A.L.R. 1407.

Thoroughly settled doctrine in Illinois are the principles that the law favors the early vesting of estates, Peadro v. Peadro, 400 Ill. 482, 487, 81 N.E.2d 192, and that devised estates will vest in interest at the death of the testator unless a later time for vesting is very clearly indicated to be the manifest intention of the testator by the express words of his will. Murphy v. Westhoff, 386 Ill. 136, 140, 53 N.E.2d 931. Where the testamentary language is susceptible to either construction, that one which vests the remainders will be adopted in preference to a construction that the interests are contingent. Riddle v. Killian, 366 Ill. 294, 300, 8 N.E.2d 629.

In construing wills the intention is ascertained in two ways: first, from the actual meaning of the testator in the words he employed to which all rules of construction give way; and, second, by finding his presumed intention gathered by the application of rules of construction applicable to all cases where the meaning is obscure, doubtful or uncertain. Freudenstein v. Braden, 397 Ill. 29, 32, 33, 72 N.E.2d 832. If the testamentary intent is ascertainable from language of the will there is no occasion to invoke the rules of construction. Stagg v. Phenix, 401 Ill. 134, 145-146, 81 N.E.2d 565.

It is clear from the language which the testator employed and by application of all general rules of will construction as well as under the only precedent as such cited by counsel or found by the court, that the remainders Otto Young gave his grandchildren were vested estates.

Study of the testamentary instrument leads inescapably to a conclusion that it was drafted with infinite care and skill. It must, therefore, be presumed that all of the testator's language was incorporated by design and that he had a specific purpose for the inclusion of each term and phrase. By the same token it will be considered that any word or provision thought

to be lacking was omitted intentionally. The Bank contends in effect that under a proper construction of the will the word "surviving" should be inserted into the testator's description of his remaindermen, so that where he provided for distribution of his trust estate "in equal shares between my grandchildren" it should be regarded as reading that the trust estate upon its termination "shall be divided in equal shares between my surviving grandchildren." The interpolation of such a key term would amount to a rewriting of the will, which courts may never do under the cloak of a construction. Gridley v. Gridley, 399 Ill. 215, 229, 77 N.E.2d 146. The circumstance that the testator did employ words of survivorship in four other connections in this same dispositive sentence makes it manifest that he intentionally omitted such condition in describing his ultimate beneficiaries. Obviously, from the context, the testator had the matter of survivorship in the forefront of his mind while providing for the distribution of his trust estate, and the fact that he did not in terms restrict residual takers to the "surviving" grandchildren must have been because he did not intend to so limit them.

 In addition to the established general principles that the vesting of remainders is preferred as a matter of public policy to any construction of contingency, and any doubt will be resolved in favor of the earlier vesting of estates, and where a testamentary provision is susceptible to both constructions that which creates a vested remainder will be adopted, it is equally well settled in Illinois that estates granted by will are deemed to vest at the death of the testator unless clear and unmistakable language is employed in the testament specifying a later time for their vesting. Peadro v. Peadro, 400 Ill. 482, 487, 81 N.E.2d 192; Murphy v. Westhoff, 386 Ill. 136, 140-141, 53 N.E.2d 931; Hartwick v. Heberling, 364 Ill. 523, 529, 4 N.E. 2d 965; Dustin v. Brown, 297 Ill. 499, 508, 130 N.E. 859; Continental Illinois Nat. Bank & Trust Co. v. Kane, 308 Ill.App. 110, 126, 127, 31 N.E.2d 351. The will of Otto Young will be searched in vain for any such plain or unequivocal provisions. The only language to be found in the entire instrument which could possibly suggest such a contingency is a phrase following the testator's designation of his principal beneficiaries: " * * * the surviving issue of any deceased grandchild to stand in the place of and receive the share which such deceased grandchild would have been entitled to receive if then living." The Illinois courts in varying language have repeatedly proclaimed the general rule that "if possible, a will must be construed as giving an estate of inheritance to the first devisee unless other limiting or qualifying language used shows clearly and unequivocally that it was the intention of the testator to limit or qualify the estate granted." Mitchell v. Snyder, 402 Ill. 279, 282, 83 N.E.2d 680, 681. And, more specifically, a similar clause has been passed on by the Illinois Supreme Court in at least three cases, it being held on each occasion, that the language in question did not detract from the vested character of the remainders. Knight v. Pottgieser, 176 Ill. 368, 52 N.E. 934; Warrington v. Chester, 294 Ill. 524, 128 N.E. 549; Smith v. Shepard, 370 Ill. 491, 19 N.E.2d 368. One case cited in the defendants' briefs to the contrary is expressly predicated upon New York law. People v. Byrd, 253 Ill. 223, 97 N.E. 293.

Each side has pressed upon the court the authorities and principles of construction it believes to be controlling here, and each does so with equal earnestness and conviction. The closer though the court came to grips with this problem, the less confusing its solution has become. The limitations of the will of Otto Young in disposing of the corpus of his residuary trust, when viewed in the setting of decisions which have dealt with kindred clauses, take on a familiar pattern. The cases have a strikingly similar feature. After intermediate limited estates or income gifts, the property is given to individuals or a class with a substitutionary gift to the children or issue of the share of a primary taker in the event of his death before termination of the intermediate estate. Such death has presented in the decided cases the question here, whether when he dies without children or issue the deceased primary taker has an interest in the property which passes to his heirs or would pass under his will if he

left one. In other words, is his interest a transmissible one?

The cases both here and elsewhere dealing with this problem have, in overwhelming number, affirmed the position taken by the plaintiff. Plaintiff's counsel concedes that from time to time beginning with Bates v. Gillett, 132 Ill. 287, 24 N.E. 611, contrary decisions have been announced by the Supreme Court of Illinois, among them People v. Byrd, 253 Ill. 223, 97 N.E. 293; Cummings v. Hamilton, 220 Ill. 480, 77 N.E. 264, and Spengler v. Kuhn, 212 Ill. 186, 72 N.E. 214, upon which and the principle of which some of the defendants rely. The plaintiff asserts that the latter decisions follow Bates v. Gillett, 132 Ill. 287, 24 N.E. 611, in principle, and that the Bates case, overruled in Dustin v. Brown, 297 Ill. 499, 130 N.E. 859, can no longer be deemed applicable. See Crowley v. Engelke, 394 Ill. 264, 272, 68 N.E.2d 241. This court is of the opinion that at all relevant times the authorities opposed to Bates v. Gillett were numerically in preponderance, and that Dustin v. Brown destroyed the efficacy of the principle upon which the defendants must rely to defeat the plaintiff's claim.

The special emphasis which People v. Byrd, 253 Ill. 223, 97 N.E. 293, has been accorded by counsel for some of the defendants has necessitated special consideration of it. That was a tax case, and both sides agreed that the will involved there should be controlled by the law of New York. Only New York cases were cited by the Illinois Supreme Court in its opinion. It is disapproved by text writers, whose opinions upon Illinois law have been accorded recognition, as not in harmony with the authorities. It applies a principle approved in Bates v. Gillett, and rejected in Dustin v. Brown. It cannot be reconciled with the later case of Warrington v. Chester, 294 Ill. 524, 128 N.E. 549. For some one or more of these reasons People v. Byrd, even if it were otherwise applicable here, can not be accepted as an authority. Much of what has been said about People v. Byrd is equally applicable to White v. White, 312 Ill.App. 628, 39 N.E.2d 79, upon which some of the defendants rely heavily. Moreover, the contrast between the fourth and fifth clauses of the will there supports the decision, and the case, properly understood, may not be regarded as needing any support from the discredited cases upon which the Court purports to rely.

Before turning to other phases, this court is constrained to consider the reliance some of the defendants have placed upon the words "would have been entitled to receive if then living," which conclude the dispositive sentence under consideration, as to their operation in making the gift to the grandchildren contingent upon their survivorship of the trust period. After giving these words the most careful consideration in the light of Ducker v. Burnham, 146 Ill. 9, 34 N.E. 558, 37 Am.St.Rep. 135; Warrington v. Chester, supra, Pyne v. Pyne, 81 U.S.App.D.C. 11, 154 F.2d 297, and McArthur v. Scott, 113 U.S. 340, 5 S.Ct. 652, 28 L.Ed. 1015, the court has concluded that they do not have the effect of rendering the gift contingent. By reason of other considerations of controlling importance, hereinafter discussed, the futurity which they import into the gift is applicable to the possession and enjoyment of the corpus alone and not to the inception of the gift. The distinction between the vesting of property in possession and enjoyment on the one hand and in interest upon the other, as pointed out in the decisions, is fundamental.

There is urged in behalf of some of the defendants a general purpose of the testator to keep the estate in his lineal descendants. That this is true must be conceded no more than it has to be in any case where lineal descendants are designated as the primary takers of property with a substitutionary gift to their issue. Every such disposition indicates a like purpose, and to be satisfied it does not require that the gift to the primary takers be held contingent. If this were not so, nearly all the decisions cited earlier would have to be rejected. These cases carry out that purpose to the full measure of the testator's intention as he has expressed it. The leaning upon the spend-thrift trust clause by counsel for the Bank, in this connection, affords no support for its position. The testator when inserting this clause in the income gifts was concerned only with protection of the income beneficiaries against creditors. And if, as the Bank contends, the testator had a differ-

ent purpose in mind, the absence of a spendthrift clause from the gifts of corpus is not without significance as supporting the plaintiff's position.

At this point it is not amiss to again call attention to Peadro v. Peadro, 400 Ill. 482, 81 N.E.2d 192, 194, upon which counsel for both the Bank and other defendants rely. That case shows the extreme view to which the Illinois Supreme Court has now committed itself in favor of the early vesting of future interests. It also indicates the effect of that attitude upon the point under consideration. The testator there gave a life estate to his wife and "after the death of (my wife) all the real estate devised to * * * (her) for life shall be equally divided * * * between (here were given the names of four nephews and nieces), or the survivor of them, to be their sole and absolute property." While this will manifested a purpose to keep the property in the testator's family, the Court held that the remainders vested indefeasibly in each nephew and niece who survived him. The practical result of this ruling was to permit a second wife of the husband of a niece, whom she predeceased, to share in the property. The Peadro case strongly supports the plaintiff's claim.

The plaintiff stresses, as has been noticed, the preference of courts for a construction in favor of vesting, against intestacy, and for the view which regards a prior interest as vested to be divested, if at all, by a substitutionary gift. All such considerations have influenced courts in their thinking, and each of these rules of construction are applicable here. Counsel for the plaintiff also emphasize the special context of the will of Otto Young in aid of their position. They point out that the testator was familiar with the use of words of survivorship and used them, but did not do so, significantly, with reference to his grandchildren. They show that there is no gift over of a grandchild's share except to his issue and no provision for reverter of such a share to the corpus of the trust. They contrast the last sentence of Article "Fifth" of the will with the first sentence in the "Sixth" article. The former provides for the reversion of accumulated income to the trust corpus of the share which might otherwise

come to the issue of any daughter in case such issue dies under 21 and before termination of the trust; there is no similar provision in the gift of corpus. These considerations based upon the special context of the will of Otto Young have been stressed in the cases and are important here. See Northern Trust v. Wheaton, 249 Ill. 606, 613, 94 N.E. 980, 34 L.R.A., N.S. 1150; Gibbens v. Gibbens, 140 Mass. 102, 106, 3 N.E. 1, 54 Am.Rep. 453; American Security & Trust Co. v. Sullivan, D.C., 72 F.Supp. 925, 933-934; Plitt v. Plitt, 167 Md. 252, 258, 173 A. 35, 109 A.L.R. 1; Britton v. Thornton, 112 U.S. 526, 528-530, 5 S.Ct. 291, 28 L.Ed. 816; White v. White, 312 Ill. App. 628, 633-634, 39 N.E.2d 79; Auger v. Tatham, 191 Ill. 296, 303, 61 N.E. 77; Cahill v. Cahill, 402 Ill. 416, 422, 84 N.E.2d 380.

The cumulative impact of the great weight of authority which plaintiff's counsel has brought to bear upon this issue of construction, aided by reference to the general rules of construction, and further supported by the special context of Otto Young's will, has persuaded this court to adopt the view that the remainder gifts of corpus to grandchildren were always vested. This remainder was vested in such of the testator's grandchildren as were in esse at his death and opened up to let in others as they were afterward born. If the remainder was thus vested it seems conceded that it would be divested in favor of issue alone. The defendants do not controvert the latter proposition and, indeed, it does not seem that such could successfully be disputed in the face of the array of authorities cited in its support, which include, among others, the following: Siddons v. Cockrell, 131 Ill. 653, 23 N.E. 586; Knight v. Pottgieser, 176 Ill. 368, 52 N.E. 934; Pingrey v. Rulon, 246 Ill. 109, 92 N.E. 592; Northern Trust Co. v. Wheaton, 249 Ill. 606, 94 N.E. 980, 34 L.R.A., N.S., 1150; Warrington v. Chester, 294 Ill. 524, 128 N. E. 549; Dustin v. Brown, 297 Ill. 499, 130 N.E. 859; Smith v. Shephard, 370 Ill. 491, 19 N.E.2d 368; Continental Ill. Nat. Bank v. Kane, 308 Ill.App. 110, 31 N.E.2d 351.

As intimated in the briefs, a certain amount of disharmony existed at one time in the Illinois cases determining vested

and contingent remainders. Closer examination would reveal that the inconsistency which might be pertinent here was more apparent than real. But, in view of the doctrine that decisions in will construction suits are not controlling unless the testament in each case is the same, no such reconciliation need be attempted. While a will identical with Otto Young's has apparently never been passed upon by the Illinois reviewing courts, such a testament was constructed by the United States Supreme Court and that decision has been cited with approval and thus recognized and adopted by the Illinois Supreme Court.

The will construed in McArthur v. Scott, 113 U.S. 340, 5 S.Ct. 652, 28 L.Ed. 1015, is virtually identical with the testament in the case at bar, so much so that it may be regarded as a precedent for this controversy. In the McArthur case the Supreme Court decided that the testator's gifts to his grandchildren were vested remainders. Duncan McArthur, who died in 1839, created a trust by his will for the benefit of his widow, children and grandchildren, providing that the income be paid them during their lives and that when his last surviving child died and his youngest surviving grandchild had reached the age of twenty-one the trust would end and the corpus be divided equally between his grandchildren. It is pointed out in the opinion, 113 U.S. at page 375, 5 S.Ct. at page 659, that the main question the Court was called on to decide was, "whether the equitable estate in fee, which Duncan McArthur, by his will, undertook to devise to his grandchildren, children of his five surviving children, was vested or contingent." Other issues submitted were whether the testamentary trust violated the rule against perpetuities and whether a prior decree barred the suit. The Supreme Court held that Duncan McArthur's trust was not within the prohibition of the rule against perpetuities and was not barred by the earlier adjudication, and in ruling that the remainders to grandchildren were vested estates it said, 113 U.S. at page 378, 5 S.Ct. at page 660: "It has long been a settled rule of construction in the courts of England and America that estates, legal or equitable, given by will, should always be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should be contingent upon a future event". As appears from the opinion, 113 U.S. at pages 377-378, 5 S.Ct. at pages 660-661, the same contentions were urged in the McArthur case as have been advanced here. The Court there stated, 113 U.S. at page 379, 5 S.Ct. at page 661: "The case would come within the settled rule that 'where a remainder is so limited as to take effect in possession, if ever, immediately upon the determination of a particular estate, which estate is to determine by an event which must unavoidably happen by the efflux of time, the remainder vests in interest as soon as the remainder-man is in esse and ascertained: provided nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession.'" The Court then observed: "The terms in which the testator has expressed his intention likewise point to a vesting of the remainder in all his grandchildren." Answering the claim that the remainders should be held contingent because of the clause substituting issue for any deceased grandchildren, the Court said, 113 U.S. at page 381, 5 S.Ct. at page 662: "The direction that if any grandchild shall have died before the final division, leaving children, they shall take and receive per stirpes the share of the estate, both real and personal, which their parents would have been entitled to have and receive if then living, was evidently intended merely to provide for children of a deceased grandchild, and not to define the nature, as vested or contingent, of the previous general gift to the grandchildren; and its only effect upon that gift is to divest the share of any grandchild deceased leaving issue, and to vest that share in such issue." The Court concluded, 113 U.S. at page 384, 5 S.Ct. at page 663: "The estate in remainder devised by Duncan McArthur was vested in all his grandchildren per capita, with an executory devise over of the shares of those only who should die, leaving issue, before the final division."

McArthur v. Scott, 113 U.S. 340, 5 S.Ct. 652, 28 L.Ed. 1015, has been approved by the Illinois Supreme Court and is to be looked upon at least as in harmony with the law of Illinois. Thomas v. Stoakes, 328 Ill.

115, 159 N.E. 269; Pingrey v. Rulon, 246 Ill. 109, 92 N.E. 592; Hawkins v. Bohling, 168 Ill. 214, 48 N.E. 94; Scofield v. Olcott, 120 Ill. 362, 11 N.E. 351.

It is suggested in some of the briefs that Duncan McArthur's will was used as a model in the drafting of Otto Young's testament. Certainly, this is not an unreasonable inference. Otto Young and Duncan McArthur had comparable family situations to provide for and the objectives of each in making his testamentary disposition were the same. Interesting to note in this connection from the transcript of the Circuit Court proceedings introduced at the trial by the Bank is that it was the chancellor's opinion in the prior accounting suit, though not necessary there to decide, that the ultimate distribution of the estate was postponed for the longest period permissible under the rule against perpetuities. Under such circumstances, it seems not unlikely that the capable lawyer entrusted with preparing an instrument to dispose of Otto Young's property so that "the corpus of his estate should endure for the longest possible period permitted by the rule against perpetuities," would have consulted an opinion of the United States Supreme Court handed down less than twenty years before where just such a result was approved under the common law upon an identical set of facts.

In view of the testator's adjudicated objective, that his trust "should endure for the longest possible period permitted by the rule against perpetuities," it cannot be said that the postponement of enjoyment was for reasons personal to the ultimate taker or was not for convenience of the estate. In Chicago Title & Trust Co. v. Shellaberger, 399 Ill. 320, at page 334, 77 N.E.2d 675, 683, the Illinois Supreme Court said at page 196: "Immediate vesting is indicated when the postponement of enjoyment is * * * for the convenience of the property and not because of reasons personal to the beneficiary." See, also, Peadro v. Peadro, 400 Ill. 482, at page 488, 81 N.E.2d 192, where the Court said: "If the division is not deferred for reasons personal to the devisee but merely because the testator desired to appropriate the subject matter of the devise to the use and benefit of another

during the life of the latter, the vesting of the devise in remainder will not be postponed but it will vest at once, and the right of enjoyment only will be deferred."

This identical question of Illinois law, whether remainders devised by a testator to his grandchildren were vested or contingent, has very recently been passed upon in Hodam v. Jordan, D.C., 82 F.Supp. 183, not noticed in the extensive briefs here because published since their filing. The opinion in Hodam v. Jordan, by Judge Lindley, contains an exhaustive analysis of authorities touching on the problem of future interests presented by this record, including a majority of the cases cited by counsel for both sides of the instant controversy. Though the will in the Hodam case contained language much more strongly suggesting contingency upon survivorship, Judge Lindley held the gifts were vested. Because of its peculiar applicability to the case at bar, the opinion in Hodam v. Jordan is quoted from at length, 82 F.Supp. at pages 184, 185, 186–187, 188–189:

"The only question presented is as to the character and quality of the estate of Rolla A. Jordan, grandson of the testator and son of James A. Jordan, one of the sons of the testator * * * If the interests of Rolla and the testator's other grandchildren created by the will were contingent upon the ultimate takers surviving the payment of all encumbrances, it is probable that the trust violated the rule against perpetuities as it has been applied in the State of Illinois * * * Gifts to take effect after the payment of debts, if contingent upon the survivorship of that event, are equally subject to objection under the English authorities and according to the teaching of Professor Gray. Carey & Schuyler, Future Interests, Section 489, Note 71. On the other hand such gifts have always been upheld in this state when the interests created by them are vested. Scofield v. Olcott, 120 Ill. 362, 11 N.E. 351. Such terms as 'when' or 'after' when used in connection with the creation of the gift are said to relate to the time of enjoyment and not to the time of vesting. Heisen v. Ellis, 247 Ill. 418, 93 N.E. 362. In the present case, we find even stronger language, for the testator has said that title of the remainder-man 'shall

vest' at the time of enjoyment 'and not before.' However such expressions are not always conclusive that vesting is to be postponed. Carey & Schuyler, supra, p. 295. And it is well established in Illinois that the law favors the early vesting of estates. Murphy v. Westhoff, 386 Ill. 136, 53 N.E.2d 931 * * * Because of this threat to the validity of the trust, I am inclined and it is my duty, I think, to hold that the interest vested at the earliest possible moment * * *

"The question remaining is whether, at the time Rolla was adjudicated a bankrupt, this remainder was indefeasibly vested, or vested subject to divestiture, or whether it was contingent.

"In the first sentence of the sixth paragraph of the will there is a devise to grandchildren, the grandchildren taking the share their parents would have taken had no will been made. To my mind, this gave the grandchildren a vested remainder, subject to open to let in any grandchildren born later. If the testator had stopped there, we would have no trouble. But, he proceeded to say, 'it being my intention by this will that at that time and not before the title to said real estate shall vest in the heirs of my children or their descendants.' The words 'at that time' clearly refer to the death of testator's last surviving child, at which time the trust was to terminate. Does this mean that he intended that the remainder be contingent until the death of the last life tenant? In Spengler v. Kuhn, 212 Ill. 186, 72 N.E. 214; Cummings v. Hamilton, 220 Ill. 480, 77 N.E. 264; Campbell v. Campbell, 380 Ill. 22, 42 N.E.2d 547; People v. Byrd, 253 Ill. 223, 97 N.E. 293; White v. White, 312 Ill.App. 628, 39 N.E.2d 79, and Johnston v. Herrin, 383 Ill. 598, 50 N.E.2d 720, the court found the remainder to be contingent because, under the language of the instrument involved, it was impossible to determine who would take until the life tenant died. The word 'surviving,' a word which limited the gift and the donee, was the stone in the way and in each instance was held to preclude the vesting of the gift until it could be determined who the donees would be * * *

"The governing rules seem clear from the following Illinois authorities. In Flanner v. Fellows, 206 Ill. 136, 68 N.E. 1057, under the devise in trust to pay the income 'to my sister * * * during her life, and after her death * * * to her children,' the court held that the sister took a life estate and her children a vested remainder subject to open to let in any children subsequently born to her. In Smith v. Shepard, 370 Ill. 491, 19 N.E.2d 368, 369, in a devise, 'To my beloved wife' for life and upon her death, 'all of my estate then remaining shall be divided equally among my children, share and share alike, the descendants of any deceased child to take the parent's share,' the court held that the children had vested remainders, subject to an executory devise over in case they predeceased the life tenant. In Knight v. Pottgieser, 176 Ill. 368, 52 N.E. 934, in a devise 'unto my well-beloved wife' for life, 'and upon and at her death the same to go to, and be divided amongst, my children and their descendants, in equal shares, the descendant or descendants of a deceased child to take the parent's share in equal proportions,' the court held that the children had vested remainders. In Lachenmyer v. Gehlbach, 266 Ill. 11, 107 N.E. 202, 203, the gift was 'to my wife' for life and after her death 'to my children, share and share alike, and shall any of my children die, then the children of such deceased child, should any children be surviving such deceased child, to take the share of the parent so deceased; and should any of my children die leaving no issue, then the share of such deceased child shall be divided equally among my surviving children.' The court held that the children had vested remainders, subject to shifting executory devises over in the event any of them should die prior to the life tenant. In Warrington v. Chester, 294 Ill. 524, 128 N.E. 549, under a devise to my wife for life, remainder to my children, the issue of any children who may be then deceased taking the share to which such deceased child would be entitled to if living, the court held that the children had vested remainders, subject to executory devises over, if the remainderman should die prior to the life tenant, leaving issue. * * *

"The following quotation from Murphy v. Westhoff, 386 Ill. 136, 140, 53 N.E.2d 931, 933, is typical of the language running

through the Illinois cases discussing vesting of estates:

"'The rule is established by many authorities that estates devised will vest at the death of the testator, unless a later time for vesting is clearly indicated by the express words of the will, or is necessarily implied therefrom (citing cases). Where, in the construction of a will, there is doubt as to the point of time it was intended the estate should vest, the earliest will be taken. The law favors the early vesting of estates. It has long been the settled rule of construction that estates, legal or equitable, given by will, should be regarded as vesting immediately unless the testator has, by very clear words, manifested an intention that they should be contingent on a future event (citing cases).'

"*Remembering that Illinois is committed to the rule favoring the early vesting of estates; that no express words of survivorship were used; that the testator's chief purpose was to keep the estate intact until all the indebtedness had been paid; and that the provision as to the vesting of legal title is entirely consistent with a holding that the equitable remainder was vested, I conclude that Rolla's remainder was, at all times, vested, subject to being divested.*"

With a few minor changes in terminology, such as "the testator's chief purpose was to keep the estate intact *for as long as permitted by the rule against perpetuities*" instead of "until all the indebtedness had been paid," Judge Lindley's ruling set forth in the last quoted paragraph applies with singular appropriateness here.

 Taking the will as a whole and examining each of its parts together with all of the surrounding circumstances in light of the applicable rules of construction, there can be but one construction of the provision under consideration and that is that Otto Young intended that the ultimate gift of corpus to his grandchildren be vested estates.

### III.

#### The Succession in Trust.

 Determination of plaintiff's second claim, that a successor trustee must be appointed by this court and that the First National Bank is accountable here as a trustee de son tort, necessarily turns upon a construction of the following provisions in the will (Secs. Fourth and Sixth):

"I give, devise and bequeath all the rest, residue and remainder of my estate, of every kind and nature, to the first Trust and Savings Bank of Chicago, a corporation organized under the laws of the State of Illinois * * * as trustee * * * In the event that said trustee shall refuse to qualify or act, or further act, as trustee under this will, for any cause, a successor in trust, or a new trustee, may be appointed by any court of competent jurisdiction by and with the approval in writing of the appointee by not less than one-half (½) in number of my wife and children then living and such new trustee so appointed shall have all the powers given to the original trustee named herein."

Plaintiff states that "the testator's intention appears to be that upon any termination of the corporate existence of the First Trust and Savings Bank of Chicago, an Illinois corporation, through unification with another corporation by consolidation, merger, sale, or otherwise, there shall be a vacancy in the trust and that appointment of a successor trustee may be had only through resort to a court of equity in the manner provided for by the terms of his will." Under this construction it is urged that the First National Bank of Chicago has been administering Otto Young's trust estate without authority or right, and that the First Union Trust and Savings Bank before it was lacking in legal authorization to act. Plaintiff contends that a successor trustee must be appointed to preserve the trust and that the unauthorized or constructive fiduciaries should be held accountable as trustees de son tort.

The First National Bank seeks to justify its action in taking over the trust on the ground there has never been a vacancy in the trust as a matter of law and because it was "the testator's intention that the trustee under the trust created by his will should be the trust organization constituting a part of or being directly affiliated with the First National Bank of Chicago." Its position in the latter respect is based largely on

"the relationship between the testator and the First National Bank of Chicago and First Trust and Savings Bank."

It is difficult to perceive how the testator could have provided more plainly for the mode of appointing a successor trustee in the event his designated trustee ceased to act for any reason. He stated in unmistakable terms that any successor or new trustee must be appointed by a court of competent jurisdiction. The law appears firmly settled in Illinois that where a testator specifies in what manner a successor trustee is to be appointed, such a fiduciary can succeed to the trust in no other way. In French v. Northern Trust Co., 197 Ill. 30, at page 38, 64 N.E. 105, 107, the Illinois Supreme Court stated the law on this subject to be: "The author of a trust has the right to say in what manner vacancies shall be filled, and if he exercises that right they cannot be filled in any other way, unless there is a failure or refusal to fill them as directed, or the trustee fails or refuses to act, in which case chancery will interpose to preserve the trust." To the same effect, see Estate of Beckwith v. Cooper, 258 Ill. App. 411, and cases there cited.

It may not be seriously claimed that Otto Young's original trustee is still acting, since it is undisputed that the corporate life of the First Trust and Savings Bank has long since been extinguished. Of necessity, therefore, the First National Bank in administering the trust is either a successor trustee or a new trustee. The same was true before it of the First Union Trust and Savings Bank. In either case, by the terms of the will, the successor bank could be acting properly only by the decree of a court of equity. It is admitted that no such judicial sanction was ever obtained, either for the First National Bank to act, or in any way approving the trust administration by its predecessor, the First Union Trust and Savings Bank. The original trustee having ceased to act by reason of its legal death, and a successor or new trustee having never been lawfully appointed, the only conclusion reachable is that the trust is vacant. The McFadden Act, 12 U.S.C.A. § 36, does not apply to such a situation. Ex parte Worcester County

National Bank, 279 U.S. 347, 49 S.Ct. 368, 73 L.Ed. 733, 61 A.L.R. 987.

Much has been said by both sides as to the status of the First National Bank had such provision as to appointment of a successor trustee not existed in the will of Otto Young. Whether, in the absence of such provision, the First National Bank would now be a duly constituted trustee is not before this court. The Bank relies heavily upon Chicago Title & Trust Co. v. Zinser, 264 Ill. 31, 105 N.E. 718, Ann.Cas. 1915D, 931, where the Court held the title company's position as executor could not be challenged in a suit by it for specific performance. After the testatrix executed her will naming another corporation as executor, the latter consolidated with the title company during her lifetime. Also, the title company had received its appointment under the will from the Probate Court. This circumstance, coupled with the fact that the consolidation occurred in the testatrix' lifetime under the then existing laws of the State, would make the Zinser decision inapplicable as an authority upon the effect of the consolidation of a State bank with a national bank in the instant case, quite apart from the special provision in the decedent's will. It should not be lost sight of that national banks were unable to act as testamentary fiduciaries until seven years after Otto Young's death, and that State banks could not consolidate with national banks until more than twenty years thereafter. First National Bank v. Lindberg, 293 Ill.App. 474, 12 N.E.2d 917, sheds no light upon the consolidation problem, even in the absence of such a provision in the will, because the case deals only with the inactive trusteeship of a trustee under a mortgage deed of trust. There the mortgagor was attacking the status of the plaintiff in foreclosure to escape his just obligation to bondholders and free his property from the lien of the mortgage.

The case now before this court requires it to determine the effect of the specific provisions quoted from the will of the decedent, and even if it be assumed that in its absence the First National Bank would have acquired a lawful status as trustee, it is impossible to reach that conclusion upon this record. That the named trustee ceased to

exist and, therefore, could not act as trustee, is established beyond controversy, for the Zinser case upon which the Bank most relies holds, as do others, that bank consolidations destroy the constituent corporations. Thus the condition specified in the decedent's will occurred as early as 1929. Appointment of "a successor in trust" became necessary, and the mode of selection was specified by the testator to be through "any court of competent jurisdiction." This procedure has evidently not been resorted to by any beneficiary of the estate, either alone or in conjunction with others. It is impossible to conclude that "a successor in trust" under Otto Young's will could acquire a lawful status except through chancery appointment, for it is clear that the will contemplates this procedure in the events which have happened.

The Bank seeks to escape this conclusion by attempting to show through extrinsic circumstances that the First National Bank fell within the testator's intent in executing the successor trusteeship and, therefore, properly acts without judicial appointment. How Otto Young could have envisioned what was legally impossible of attainment until many years after his death is not explained, and no such purpose is intimated in his will. No amount of extrinsic evidence could have the effect of transforming a designation of the First Trust and Savings Bank into an appointment of the First National Bank. They were separate legal entities and existed and functioned as such. Each owed its origin to a different sovereignty and each was amendable to different laws. This court is compelled to hold that the First National Bank is acting without authority and as such is a trustee de son tort, and it is accountable as such during its administration of the trust and for its predecessor in like capacity from the date of the consolidation of the First Trust and Savings Bank with the Union Trust Company after which it became the First Union Trust and Savings Bank.

 The First National Bank asserts further that the testator's language should be construed to mean that he did not specifically appoint as his trustee "the First Trust and Savings Bank of Chicago, a corporation organized under the laws of the State of Illinois," and that this court should declare by way of judicial construction that it was "the testator's intention that the trustee under the trust created by his will should be the trust organization constituting a part of or being directly affiliated with the First National Bank of Chicago." On its face a ruling of this character would require the deletion of language showing clear testamentary intent and the substitution for such expunged provision of an entirely different direction nowhere indicated by the testator within his will. Such action by the court could not constitute a construction of the testamentary instrument but would amount to redrafting the will, a course the courts are strictly forbidden to follow. Gridley v. Gridley, 399 Ill. 215, 229, 77 N.E.2d 146. The Bank claims that its construction should be adopted "especially" because of "the relationship between the testator and the First National Bank of Chicago and First Trust and Savings Bank." Apparently that relationship was quite close, the testator having been a stockholder and director of both banks. If such a circumstance were properly to be considered in construing the testator's language, his intimate knowledge of the First National's affairs as stockholder and director might just as well be viewed in connection with the fact of his failure to mention such bank as indicative that he did not desire it to act as his trustee. In this connection there is force in the suggestion that under the Bank's construction a trustee has never been validly appointed since designation of a national bank at the time of the will would have been unlawful, but as this inquiry would require going behind the Circuit Court decree of 1922 it will not be further noticed.

 Even in the light now cast by the First National Bank, the relationship between Otto Young and the two banks cannot help it, Ickes v. Ickes, 386 Ill. 19, 53 N.E.2d 585; Cahill v. Michaels, 381 Ill. 395, 45 N.E.2d 657; Knight v. Knight, 367 Ill. 646, 12 N.E.2d 649. In the Ickes case the Court said, 386 Ill. at page 29, 53 N.E. ed at page 590: "Extrinsic evidence is never admissible to vary the intent [of the testator] as clearly expressed in the will." And in the Knight case the Court pointed

out, 367 Ill. at page 648, 12 N.E.2d at page 650 that if "the wording of the will is plain \* \* \* the court cannot change the language *even if the testator intended something different from what he said."* However, assuming it was testator's wish that the First National Bank's trust organization or affiliate act as his trustee but that such a provision was omitted from the will merely because he overlooked it, or that he had such a provision in his mind but simply neglected to express it, or that he would have so provided if he had only thought of it, the controlling decisions are uniform to the effect such speculation may not be indulged in upon construction by the court. In Hull v. Adams, 399 Ill. 347, at page 352, 77 N.E.2d 706, 710, the Illinois Court said: "The question for the court to determine in every will construction case is not what the testator meant to say, but what he meant by what he did say." In Glaser v. Chicago Title & Trust Co., 393 Ill. 447, page 463, 66 N.E.2d 410, page 417, the Court said: *"The Court cannot speculate or guess as to what provision he would have made had he not overlooked it."* In Gridley v. Gridley, 399 Ill. 215, page 229, 77 N.E.2d 146, page 153, the Court said: "When a condition has arisen in regard to a testator's estate which he had not taken into consideration and which he would probably have provided for if he had thought of it when making his will, the court cannot conjecture what provision he would have made unless that provision is contained in the words he has used in making his will. First Trust and Savings Bank v. Olson, 353 Ill. 206, 187 N. E. 282. The intention of the testator is not to be deduced from speculation as to what he would have done had he anticipated a change in the circumstances surrounding him at the time of the execution of the will, *since this would amount to making a will for him and not to interpreting the will he has made."*

## IV.

### Right to an Accounting and Other Relief.

 The right of plaintiff, as an heir of a deceased grandchild who has died intestate without issue, to an accounting in this cause is clear, on her own behalf and as the representative of all other heirs of such predeceased remaindermen. In Warner v. Mettler, 260 Ill. 416, at page 419, 103 N.E. 259, 260, the Court said: "Upon a bill in chancery the court can compel an accounting by the trustee." The accounting may be compelled "at the suit of any interested party, at such a time as seems reasonable to the court in view of the time which has elapsed since the last account and the nature and the status of the particular trust. In order to succeed in such a suit for accounting it is not necessary that the cestui allege that there is any sum immediately due him under the trust, or that the trustee is in default. The suit is one to obtain information concerning the course of administration, no matter what the present status is." 4 Bogert, Trusts and Trustees, § 963, pages 244–245.

 The will of Otto Young as construed leaves no doubt concerning the duty of the First National Bank to account. Its status as a trustee de son tort requires it to account to one holding such an interest in the estate as plaintiff has.

A demand upon the Bank for full disclosure was made in behalf of the plaintiff and compliance therewith has been refused upon the ground that Stanley Young's heirs have no interest in the estate. Thirty-three years of trust administration by three separate banks have passed since the last accounting. While an accounting of this large fund will undoubtedly entail expense, the circumstances of the case make it imperative that the stating of accounts be judicially taken without delay in the interest of substantial justice. The determination by this court that the First National Bank is trustee de son tort does not leave open to it any valid objection to a compulsory accounting at the suit of an interested party.

 It is clear, and this court so finds, as a matter of law, that the First Union Trust & Savings Bank, by virtue of the consolidation, aforesaid, assumed the liability, if any, of the First Trust & Savings Bank of Chicago as trustee of said trust during the period from the date of the last accounting, March 26, 1916, to the date of consolidation, February 11, 1929; and that, in turn, the First National Bank of Chica-

go, by virtue of the merger, aforesaid, assumed the liability, if any, of the First Union Trust & Savings Bank arising from the assumption by the First Union Trust & Savings Bank, by virtue of the consolidation, aforesaid, of the liability, if any, of the First Trust & Savings Bank of Chicago, as trustee, as aforesaid.

It is also clear, and this court so finds, as a matter of law, that the First National Bank of Chicago, by virtue of the merger, aforesaid, assumed the liability, if any, of the First Union Trust & Savings Bank as trustee de son tort during the period from the date of the consolidation, aforesaid, February 11, 1929, to the date of the merger, aforesaid, July 17, 1933, inclusive.

Thus, it is the finding of this court that, as a matter of law, the First National Bank of Chicago is liable, not only for its administration of the trust as a trustee de son tort since the date of the merger, aforesaid, on July 17, 1933, but also for the liability, if any, of said predecessors, during the periods of their respective administration, since the date of the last accounting, March 26, 1916. Accordingly, an accounting will be had where there can be conducted a full examination into all of the transactions of the banks since the date of the last accounting, and the First National Bank shall be accountable as a trustee de son tort from the date when the First Union Trust & Savings Bank first undertook to act as trustee of this estate.

As to the measure of liability upon such an accounting, the Illinois Supreme Court has said, Penn v. Fogler, 182 Ill. 76, 96, 55 N.E. 192, 197: "Where one without authority undertakes to execute a trust requiring the investment of a fund, he must himself carry all the risks, and make good all the losses, and have none of the profits, and his co-investors are equally liable. 'A person may become a trustee by construction by intermeddling with, and assuming the management of, trust property without authority. Such persons are trustees de son tort.'"

One question remains from the pleadings. Plaintiff, representative of the heirs of childless deceased grandchildren, and certain defendants, the surviving daughter of the testator, half of the surviving grandchildren, and one of the two general guardians, ask that their attorney fees be awarded them out of the trust fund. This is a proper case for such allowances. Where there is an honest difference of opinion respecting the correct construction to be placed upon a will, and such a difference has been demonstrated and conceded here, solicitors' fees are allowable to all assisting parties from the general funds of the trust estate. In re Estate of Reeve, 393 Ill. 272, 294, 65 N.E.2d 815. In the Reeve case the Illinois Supreme Court said, 393 Ill. at page 293, 65 N.E.2d at page 824: "The general rule is that where the testator has expressed his intention in his will so ambiguously as to make it necessary to go into a court of chancery to obtain a construction of the will in order to determine which of two or more adverse claims is valid, the cost of the litigation including solicitors' fees, should be borne by the trust estate." To the same effect, see Murphy v. Fox, 334 Ill.App. 7, 15, 78 N.E.2d 337, and cited cases.

In State Life Ins. Co. v. Bd. of Education, 401 Ill. 252, 81 N.E.2d 877, the Court, citing with approval the case of Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157, said, 401 Ill. at page 258, 81 N.E.2d at page 880: "Where one of many parties having a common interest in a trust fund, at his own expense, takes proper proceedings to save it from destruction and restore it to the purposes of the trust, he is entitled to reimbursement either out of the fund itself or by proportional contributions from those who accept the benefit of his efforts."

Plaintiff is entitled to have her rights and other legal relations declared (Title 28, U.S.C.A. §§ 2201, 2202), and to have a full and complete accounting of the trust administrations from the death of Otto Young's widow, on March 26, 1916, to the time of turnover, and to have those who administered the trust estate without authorization surcharged with any and all losses, fees or commissions which they may have deducted from the fund or for which they may have taken credit in their accounts. The trust is vacant and under the rule that a court of equity will not let a

trust fail for want of a trustee a successor trustee or trustees will be forthwith appointed.

A decree will be entered in accordance with this opinion.